GATEWOOD v. NEW RIVER CONSOL. COAL & COKE CO.

(Circuit Court of Appeals, Fourth Circuit. December 12, 1916.)

No. 1434.

1. TRIAL ⊕〰11(3)—FEDERAL COURTS—TRANSFER OF CAUSE FROM EQUITY TO LAW SIDE.

Where a bill states a cause of action cognizable in equity, the denial of a motion made under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv) to transfer the cause to the law side of the court is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 30; Dec. Dig. ⊕〰11(3).]

2. PRINCIPAL AND AGENT ⊕〰81(4)—CONTRACT OF AGENCY—CONSTRUCTION.

Defendant, which was sales agent for a number of coal mining companies, but produced no coal itself, entered into a contract by which it employed complainant's predecessor, whom he succeeded, on a commission basis, as its "sole agent in the matter of the sale of its product" in certain territory. Held, that the contract could not be construed to embrace sales of coal by the mining companies themselves on which defendant received no compensation; the situation and course of business having been known to both parties.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 196–198; Dec. Dig. ⊕〰81(4).]

3. PRINCIPAL AND AGENT ⊕〰89(7)—BREACH OF CONTRACT—SUIT FOR ACCOUNTING—EVIDENCE.

In a suit for an accounting for commissions on sales by the mining companies within complainant's territory, the relation between defendant and such companies was pertinent to the issues, and complainant was entitled to production of the contracts between them.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 236; Dec. Dig. ⊕〰89(7).]

⊕〰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PRINCIPAL AND AGENT ☞81(4)—COMPENSATION OF AGENT—COMMISSIONS ON SALES BY PRINCIPAL.

Under a contract giving an exclusive agency for sale of a product on commission within a certain territory, the agent is entitled to commissions on sales within such territory by his principal or another agent.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 196–198; Dec. Dig. ☞81(4).]

Johnson, District Judge, dissenting in part.

Cross-Appeals from the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Suit in equity by John M. Gatewood against the New River Consolidated Coal & Coke Company. From the decree, both parties appeal. Affirmed in part, and reversed in part.

Hunsdon Cary, of Richmond, Va., for appellant and cross-appellee.

Robert S. Spilman, of Charleston, W. Va., and Robert E. Scott, of Richmond, Va., for appellee and cross-appellant.

Before KNAPP and WOODS, Circuit Judges, and JOHNSON, District Judge.

KNAPP, Circuit Judge. The New River Consolidated Coal & Coke Company, defendant below, is the sales agent of a group of coal mines, some 12 or 14 in number, in the New River district of West Virginia. It does not itself engage in the business of mining or producing coal. In June, 1910, this company made a written contract with one Saunders whereby he became, on a commission basis, "its sole agent in the matter of the sale of its product at and east of Clifton forge inland and southern coastwise (all government coal not to be included in this agreement)." He had been employed on a salary the year before as "manager of sales." On December 1, 1910, Saunders formed a partnership with Gatewood, the plaintiff, to whom he assigned a half interest in this contract, and the firm of Saunders & Gatewood continued the business with the assent of the company. Effective April 1, 1911, there was a supplemental agreement which extended the contract, on an agreed commission, to include "the United States government business, that prior to April 1, 1911, has been handled on our individual account." In July, 1912, Gatewood bought out Saunders, and thereafter conducted the agency for his own benefit until the company terminated the arrangement, as it had the right to do, on March 31, 1913. In November following this suit was brought to recover commissions alleged to be due under the terms of the contract on certain sales of coal as follows:

(a) Coal sold to the Chesapeake & Ohio Railway Company between April 1, 1911, and April 1, 1912, to the aggregate of about 100,000 tons.

(b) Coal sold in 1911, through officers of the government, to the Panama Railroad Company.

(c) Coal sold by Blake & Co. to various customers in the territory covered by the contract and while the same remained in force.

(d) Coal delivered to the United States collier Sterling after the termination of the contract.

The trial court decided against plaintiff on the first two of these claims, but upheld his right to recover on the other two claims. Both parties appealed.

[1] We first consider briefly a preliminary question. It is apparent that plaintiff's grievance is an alleged breach of contract, for which his ordinary remedy would be an action at law. But, instead of instituting such a suit, he filed a bill in equity, alleging that he did not know the amount of coal which had been sold in the territory covered by the contract, and on which commissions had not been paid, nor the prices obtained therefor, and that the defendant "has in its possession full information concerning the sale and selling price of all coal shipped by it, or by any and all of the individual mines hereinbefore set out, none of which knowledge is in the possession of your orator." He therefore prayed for a discovery of the facts in this regard, including inspection of defendant's books and records, and for an accounting. We are of opinion, without arguing the point, that the allegations of this bill present a case for equitable cognizance, and are therefore sufficient to give jurisdiction to a court of equity.

After the defendant's answer was filed, plaintiff made a motion for the production of the contracts between defendant and the companies for which it acted as sales agent, to allow an examination of defendant's books of account, and to require answers to certain interrogatories which were attached to the notice of motion. The trial court denied this motion, for the stated reason that defendant's answer was sufficient, "save as to the sales alleged to have been made through the Blake agency, as to which the court is of the opinion that the claimant is entitled to a fuller answer." In the same order the court also denied defendant's motion to dismiss the bill of complaint on the ground that the facts therein stated did not entitle the plaintiff to the relief demanded. The defendant, however, refrained from asking that the cause be transferred to the law side of the court, but consented that it be retained and proceeded in as a suit in equity.

Following this decision, the defendant filed an amended answer, with an "exhibit statement" appended, which showed in detail all the sales made by Blake & Co. in the described territory. The plaintiff then made a further motion to transfer the cause to the law side of the court, under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv), and the denial of this motion is assigned as error. It seems enough to say that if, as we hold, and as plaintiff surely cannot deny, the allegations of the bill are sufficient to give jurisdiction to a court of equity, that jurisdiction was not lost by the circumstance that plaintiff's motion was disallowed, except as above recited. The bill makes a case for equitable relief, and therefore it does not appear that the suit "should have been brought as an action on the law side of the court." In other words, the rule in question is without application to this case, and it follows that the court did not err in denying the motion to transfer.

[2] Upon the merits of the controversy one or two general observations may be made before taking up the several claims in suit. In the first place, the proofs indicate that neither the plaintiff himself, nor the firm of Saunders & Gatewood, had anything to do with the sales of coal on which commissions are now demanded. It appears to be the fact that those sales were made without regard to the Richmond agency, and without the aid of those who conducted that agency. In short, the plaintiff predicates his right to recover, not upon any substantial service performed, or attempted to be performed, for the defendant, but solely upon the language of the written contract, as he insists that language must be construed. And this leads, in the second place, to plaintiff's basic contention, which is that the term "product," as used in the contract, means the product of the mines of which defendant was sales agent; that defendant, by making Saunders "its sole agent in the matter of the sale of its product," asserted or represented that it had the right and authority to sell the entire output of those mines; and therefore that Saunders and his successors were entitled to commissions on all coal produced by the mines which was sold in the territory covered by the contract.

We are unable to sustain this contention. Having reference especially to the coal furnished to the Chesapeake & Ohio Railroad, it seems clear to us that such a construction of the contract would not be warranted. Saunders had been with the defendant company for four years altogether, the last year as "manager of sales." He was perfectly aware that defendant owned none of the mines or the coal they produced, that it was merely an agent for the sale of such coal as might be intrusted to it for that purpose, and it is certainly difficult to believe that he expected to get commissions on coal which neither he nor the defendant sold, and on which the defendant itself received no commission or other compensation. This being so, we think it cannot reasonably be held that the word "product," an inapt and doubtful word as applied to the subject-matter of an agency, was intended or understood to mean the entire output of the mines represented by defendant. On the contrary, looking at the contract as a whole, the word in question would appear to mean the coal which was turned over, so to speak, to the defendant for sale, or in respect of which the defendant in some manner represented the producing companies. And this view is confirmed by the situation of the parties, their previous relations, the knowledge thus acquired by Saunders of the nature of defendant's connection and course of dealing with the mining companies, and all the circumstances surrounding the making of the contract. Evidence of the facts here referred to was properly received. Such evidence did not tend to contradict or vary the terms of the written instrument, nor was it offered for that purpose, but it did serve to explain and make more certain the true meaning and intent of an ambiguous agreement.

[3] On the present record, therefore, we are of opinion that the court below rightly refused to award commissions on the Chesapeake & Ohio coal. But the fact that defendant did not sell that coal, or receive any compensation on account of its sale, is not conclusive upon

the question of plaintiff's right to recover. The prima facie case against him, as the matter now stands, might be overcome, and defendant's liability established, or at least the burden of proof shifted, if the contracts between defendant and the several mining companies it served were put in evidence. We think it clear that plaintiff is entitled to the production of those contracts, for such support of his contention as they may afford, and it follows that the denial of his motion in that regard was an error which calls for a partial reversal of the decree. As to this item of plaintiff's claim the case must be remanded, with instructions to require the contracts to be produced, to allow both parties to present such further proofs as the introduction of the contracts may make competent and proper, and then, upon all the evidence, to determine anew the right of plaintiff to commissions on the Chesapeake & Ohio coal.

As to coal for the Panama Railroad Company, the facts relating to this claim appear to be these: In March, 1911, a purchasing officer of the government asked for bids on 550,000 tons of semi-bituminous coal for the Panama Railroad. The defendant declined to submit a bid for this coal, or to allow Saunders & Gatewood to do so, and the contract was awarded to the Pocahontas Fuel Company. It seems, however, that four of the mines represented by defendant furnished a portion of the tonnage, amounting to about 28,000 tons, and on this tonnage the plaintiff claims commissions. We are of opinion that the claim is not well founded. The original contract with Saunders excepted broadly "all government coal"; that is, all coal sold to the United States government. The supplemental agreement took out from this exception and included in the contract "the United States government business that prior to April 1, 1911, has been handled on our individual account." Saunders himself testified that the only prior business with the government were sales to the Navy Department, through the Bureau of Supplies, for bunker use in government vessels. Saunders first, and his firm afterwards, took charge of these sales, at least to some extent, and made a number of trips to Washington, for which they received only their expenses. This was the kind of government business, and no other, on which they were afterwards to get the commission stated in the supplemental contract. Subsequent to the date therein named more or less of this business was secured, and defendant paid commissions on the same according to agreement. But the coal furnished to the Panama Railroad Company was business of a distinctly different character. That coal was not sold to the Navy Department for bunker or other use in government vessels, nor was the sale effected through the Bureau of Supplies. We are clearly of opinion that this transaction, in which the four mines participated to a very limited extent, was not one to which the supplemental agreement applied. In other words, that agreement did not take the coal in question out of the exception of "all government coal" in the original contract. And this leaves out of account the defendant's further contentions that sales to the Panama Railroad Company, a corporation, were not in any sense "government business," and that coal shipped to the Canal Zone is not embraced within the contract description of "south-

ern coastwise." Assuming, without deciding, that neither of these contentions is sustainable, we nevertheless hold that this claim of plaintiff must be rejected because the sale on which it is based is not covered by the supplemental agreement.

[4] The sales through Blake & Co. stand on a different footing. Those sales were concededly made in the territory covered by the contract, and the coal sold by this agency was coal intrusted to defendant by the mines it represented for sale in the open market. The contract with Saunders made him "sole agent" in a defined territory. In that territory he was in effect given a monopoly of the business, and this entitled him to the agreed commissions on all coal sold therein which the defendant had in its hands for sale. The contract rights of Saunders excluded sales by defendant itself or by any other agent, and it was a breach of the agreement to allow any one else to sell in the territory belonging exclusively to him. The law relating to contracts of exclusive agency, and the measure of damages for breach of such contracts, is well settled, and we deem it sufficient to say that we find nothing in the circumstances of this case to form an exception to the general rule. Garfield v. Peerless Motor Car Co., 189 Mass. 395, 75 N. E. 695; Wier v. Am. Locomotive Co., 215 Mass. 303, 102 N. E. 481; Marshall v. Canadian Cordage & Mfg. Co., 160 Ill. App. 114; Illsley v. Peerless Motor Car Co., 177 Ill. App. 459; Sparks v. Motor Car Co., 85 Kan. 29, 116 Pac. 363, Ann. Cas. 1912C, 1251.

The claim for commissions on coal furnished to the collier Sterling is not open to serious question. The transaction was clearly within the scope of the supplemental agreement, for the coal was sold to the Navy Department for bunker use in a government vessel, and the circumstance that it was not delivered until after the termination of the contract cannot affect the plaintiff's right to recover.

As to the last three claims in suit the decree is affirmed. As to the first claim the decree is reversed, and the case remanded for further proceedings in accordance with the views above expressed.

JOHNSON, District Judge (dissenting in part). I concur in so much of the decree as remands the cause for further proceedings. I think that when plaintiff shows the sale of coal in the territory in which he had the exclusive agency, his right to commissions thereon follows, and the burden is on the defendant to show that commissions are not due him. Defendant must not only show that it did not make the sale, or that it did not receive commissions thereon, but that under its contract with the mining corporations it did not have the right to make the sale or to demand commissions. The mere waiver by the defendant of its rights to commissions, if it had such rights, could not deprive plaintiff of his rights. The evidence shows that the coal for the Chesapeake & Ohio Railroad was sold through the Richmond office when Saunders had charge of that office and was working for the defendant on a fixed salary. When he was changed to a commission basis, he had a right to expect commissions on the same line of sales that he had had charge of when on a salary.

We now come to the Panama Railroad coal. The District Court and this court assume that the coal sold to the Panama Railroad is a

sale to the government. The Panama Railroad is a corporation, as distinct as the Pennsylvania Railroad or any other railroad corporation. It is true that Army and Navy officers hold the principal offices. That is because the government owns the stock and controls the election of directors and officers, but any contract with the Panama Railroad is a contract with a corporation and not with the government. It is operated as a corporation by its officers and agents. The plaintiff is entitled to his commissions on the sale of this coal unless the defendant can show, not only that it did not receive any commissions, but that it had no right to receive commissions on such sale. The plaintiff having made out his prima facie case, it is no hardship on the defendant, who is in possession of all the contracts with the mining companies, vouchers, checks, books, etc., to produce them and show that neither it nor its agent is entitled to commissions on a given sale.