## SOUTHERN OREGON CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1917.)

No. 2771.

1. PUBLIC LANDS ⬤�death66—GRANTS FOR INTERNAL IMPROVEMENTS—COVENANTS—CONSTRUCTION.

By Act March 3, 1869, c. 150, 15 Stat. 340, the United States granted to the state of Oregon, to aid in the construction of a military wagon road from Coos Bay, every alternate section of public land for 3 miles on each side of the road as constructed, provided that the lands should be exclusively applied to the construction of said road and to no other purpose, and should be disposed of only as the work progressed, and provided, further, that the grant "shall be upon the condition that the lands shall be sold to any one person only in quantities not greater than one quarter section and for a price not exceeding $2.50 per acre." Section 5 provided that on proof of the completion of 10 consecutive miles of the road a quantity of the land granted, not exceeding 30 sections, might be sold, and so on until the road should be completed, and if not completed within five years no further sales should be made, and the land remaining unsold should revert to the United States. *Held*, that section 5 did not limit the effect of the proviso governing the quantity and price in making sales to such sales as were made within the five years, but that the same remained in effect as an enforceable covenant of the grant.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 219, 220.]

2. PUBLIC LANDS ⬤➔66—GRANTS FOR INTERNAL IMPROVEMENTS—CONDITIONS—NOTICE TO SUBSEQUENT PURCHASERS.

Although the state assigned its interest in the lands granted to a corporation which undertook to build the road, and patents were issued directly to the corporation, such corporation and all subsequent purchasers were charged with notice of the terms and conditions of the grant, especially as the act was referred to in the assignment and the patents.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 219, 220.]

3. PUBLIC LANDS ⬤➔66—GRANTS FOR INTERNAL IMPROVEMENTS—SALE—ESTOPPEL.

That officers of the government had knowledge that lands granted to aid in an internal improvement had been disposed of in violation of the terms of the grant, and that no action was taken in regard thereto, does not amount to an estoppel against the enforcement of covenants in the grant.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 219, 220.]

4. JUDGMENT ⬤➔713(1)—JUDGMENTS AS BAR—IDENTITY OF QUESTIONS INVOLVED.

A suit by the United States to enforce a covenant in a land grant *held* not barred by the judgments in prior suits relating to certain other lands claimed under the grant, but in which the questions involved in the later suit were not presented or decided.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1234–1237, 1239.]

Appeal from the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge.

Suit in equity by the United States against the Southern Oregon Company. Decree for the United States, and defendant appeals. Affirmed.

⬤➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The United States brought a suit against the appellant to obtain a decree forfeiting title to 96,000 acres of land, on the ground that the land which had been granted to the appellant's predecessors in interest by the United States contained conditions subsequent which had been breached. The bill alleged that the lands were granted by the act of Congress of March 3, 1869 (15 Stat. 340), entitled "An act granting lands to the state of Oregon to aid in the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg in said state"; that the act by its terms granted to the state of Oregon, to aid in the construction of said wagon road, alternate sections or public lands designated by odd numbers, to the extent of 3 sections in width on each side of said road, "provided that the lands hereby granted shall be exclusively applied to the construction of said road and to no other purpose, and shall be disposed of only as the work progresses; provided further, that the grant of lands hereby made shall be upon the condition that the lands shall be sold to any one person only in quantities not greater than one quarter section, and for a price not exceeding two dollars and fifty cents per acre." In section 2 it was enacted: "That the lands hereby granted to said state shall be disposed of by the Legislature thereof for the purpose aforesaid, and for no other; and the said road shall be and remain a public highway, for the use of the government of the United States, free from tolls or other charges upon the transportation of any property, troops, or mails of the United States." In section 5 it was enacted that: "When the Governor of said state shall certify to the Secretary of the Interior that ten continuous miles of said road are completed, then a quantity of the land hereby granted, not to exceed thirty sections, may be sold, and so on from time to time, until said road shall be completed; and if said road is not completed within five years, no further sale shall be made, and the lands remaining unsold shall revert to the United States." The bill alleged that through inadvertence the said act of Congress contained no provision authorizing the issuance of patents, and to correct the omission Congress on June 18, 1874, passed an act providing: "That in all cases when the roads in aid of the construction of which lands were granted are shown by the certificate of the Governor of the state of Oregon, as in said acts provided, to have been constructed and completed, patents for said lands shall issue in due form to the state of Oregon as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall by public act have transferred its interests in said lands to any corporation or corporations, in which case the patent shall issue from the General Land Office to such corporation or corporations upon their payment of the necessary expenses thereof: Provided, that this shall not be construed to revive any land grant already expired, nor to create any new rights of any kind except to provide for issuing patents for lands to which the state is already entitled." Act June 18, 1874, c. 305, 18 Stat. 80 (Comp. St. 1913, § 4871).

The bill alleged further that on October 22, 1870, the state of Oregon granted to the Coos Bay Wagon Road Company, a corporation, all lands, right of way privileges, and immunities theretofore granted or pledged to the state by the act of Congress for the purpose of aiding the said company in constructing the road mentioned and described in said act, upon the conditions and limitations therein prescribed; that thereafter there were issued to the Wagon Road Company, upon its representation that it had complied with the act, a patent of date February 12, 1875, conveying 42,496.93 acres, a patent of date March 18, 1876, conveying 1,080 acres, a patent dated November 8, 1876, conveying 61,111.53 acres, and a patent of date February 17, 1877, conveying 431.65 acres; that prior to May 31, 1875, the Wagon Road Company sold and conveyed about 6,963 acres of said lands to 53 purchasers, and that in evasion of the proviso of the granting act the Wagon Road Company on May 31, 1875, entered into a contract with one John Miller to convey to him 96,676.96 acres of the granted lands, and on that day delivered to him a conveyance of 35,534 acres for the sum of $35,534, also a deed of the Wagon Road for the sum of $37,200; that in those transactions said Miller was acting for the benefit of Collis P. Huntington, Charles Crocker, Leland Stanford, and Mary Hopkins, to whom on June 22, 1875, he conveyed the said

'35,534 acres; that by the contract between the Wagon Road Company and Miller it was provided that the directors of that company should continue to act for the use and benefit of Miller, for the purpose of enabling him and those for whom he was acting to conceal from the government the violations of the granting act in so conveying the lands and road to him, and that the patents were applied for in the name of the Wagon Road Company, and that its corporate existence was maintained only for the purpose of concealing from the government that company's violation of the terms of the grant; that on March 27, 1882, Huntington, Stanford, and Hopkins conveyed to Crocker their interests under Miller's deed to them, and on December 20, 1883, Crocker conveyed the same to William H. Besse, and on December 29th of that year Besse conveyed the same to Russell Gray, and he on January 5, 1884, conveyed the same to the Oregon Southern Improvement Company, a corporation of Oregon; that on January 7, 1884, in violation of the terms of the grant, the Wagon Road Company conveyed to Besse 61,143.37 acres, which was the remainder of the grant, and on June 4th of that year Besse conveyed the same to the Oregon Southern Improvement Company; that on January 4, 1884, in violation of the terms of the grant, the Oregon Southern Improvement Company gave a trust deed of all the property then held by it or thereafter to be acquired, to the Boston Safe Deposit & Trust Company, to secure payment of bonds; that on November 9, 1886, the Trust Company was succeeded by William J. Rotch and Edward D. Mandell, as trustees under the deed of trust; that on December 28, 1886, the trustees instituted a suit in the Circuit Court of the United States for the District of Oregon, to foreclose the trust deeds, and on April 11, 1887, a decree was entered ordering that the Oregon Southern Improvement Company pay the trustees the sum of $1,516,666.66; that in default of payment the property was sold in pursuance of the decree to said Rotch and William W. Crapo for the purported sum of $120,000, and that subsequently the purchasers obtained a master's deed to the property, and on December 14, 1887, they conveyed it to the Southern Oregon Company, a corporation of Oregon; that Rotch, Mandell, and Crapo in all these transactions acted for the benefit of the Oregon Southern Improvement Company, and that the officers and stockholders of that company were identical with the stockholders and owners of the Southern Oregon Company, the latter company being a reorganization of the former; that the indebtedness which the trust deed purported to secure was fictitious, and represented simply the interests of the stockholders, and that the deed of trust was executed and foreclosed with the intention of evading and defeating the rights of the government under the grant; that none of the bonds which the deed of trust purported to secure were held by others than stockholders of the Oregon Southern Improvement Company; that the price alleged to have been paid for the property at the master's sale was paid by the stockholders of that company, and was a part of a nominal transaction, the purpose of which was to defeat the rights of the United States.

The bill set forth that there were other sales after May 31, 1875, the date of the deed to Miller, which sales were described in an exhibit attached to the bill, and it alleged that the lands involved in the suit are wild and unoccupied and exceed in value $4,000,000; that the appellant asserts and assumes and exercises an unconditional estate in fee in all of said lands; that all the parties to said conveyances had notice of what had theretofore transpired with respect to the title; that the lands are all situated in a remote portion of the state of Oregon, and difficult of access; that the Wagon Road Company has from time to time sold small quantities of the land, ostensibly in pursuance of the terms of the grant; that the violations of the act alleged in the bill were wholly unknown to the complainant until 1907, and that when they were brought to the attention of Congress a joint resolution was passed and approved April 30, 1908, directing the Attorney General to prosecute any and all suits in equity and actions at law, which he may deem appropriate to enforce the rights of the United States, in any manner arising out of certain grants of land by Congress, including the aforesaid act granting lands to the state of Oregon, including the right to enforce the claims of the United States to the forfeiture of such land grants. The bill alleged that the said lands in-

volved in the suit were forfeited to the United States free of all right of the appellant, and the bill prayed for discovery, for a decree of forfeiture, and for a decree quieting the title of the government and enjoining the appellant from asserting any right or interest in the lands, and for such further relief as pertained to equity.

The answer admitted many of the allegations of the bill, admitted the contract between the Wagon Road Company and Miller for 96,676.96 acres, but alleged that the sale was made in good faith and for a valuable consideration, and that the Wagon Road Company then had an unconditional fee-simple title to the lands, evidenced by a patent. The answer alleged that the other conveyances were made in good faith, but denied that the corporate existence of the Wagon Road Company was maintained for the purposes alleged in the bill, and alleged that it was maintained for the purpose of receiving the patents which were to issue under the terms of the grant and not for the purpose of deception. It alleged that Congress, by the act of June 18, 1874, waived the conditions of the proviso of the grant, and authorized the issuance of patents free and clear of all conditions, and the answer denied that the trust deed was in violation of the granting act, or that it was executed for the benefit of the stockholders of the Oregon Southern Improvement Company, or that the indebtedness which it secured was fictitious, or that the foreclosure was for the purpose of evading the conditions of the grant, or that the price purported to have been paid at the foreclosure sale was not paid in fact, and it alleged that the sale was made in good faith and that the title actually passed. The answer denied the allegations of fraud and concealment in the matter of sales of land by the Wagon Road Company.

For affirmative defenses it set up the following: (1) That during the 43 years which have elapsed since the date of the grant the Wagon Road Company and all persons claiming under it, including the appellant, have been in open and notorious possession of the land, claiming it by adverse possession, and that the government has acquiesced in the claim. (2) That the suit is barred by the statute of limitations of Oregon, and by section 8 of the act of Congress of March 3, 1891 (26 Stat. 1099, c. 561 [Comp. St. 1913, § 4992]), and section 1 of the act of Congress approved March 2, 1896 (29 Stat. 42, c. 39 [Comp. St. 1913, § 4901]). (3) That the suit is barred by laches, acquiescence, and ratification, and by estoppel resulting from (a) the passage of the act of Congress of 1874, with the knowledge of the transfer of the land from the state of Oregon to the Wagon Road Company, (b) open and notorious possession, such as the nature of the lands would admit, by the Wagon Road Company and its successors in interest, (c) the use of the wagon road by the United States under the terms of the grant, and (d) acquiescence for upwards of 40 years in the transfers as shown by the record. (4) That the proviso defeated the object for which the act was passed and being repugnant to the grant is wholly void. (5) That the appellant is a bona fide purchaser in good faith and for full value. (6) That before purchasing it carefully examined all legislation by Congress and the state of Oregon affecting the title, and made special inquiry concerning the same, and carefully examined the patents, and was advised by eminent counsel that the title was clear and unincumbered. (7) That before purchasing the appellant ascertained that the Wagon Road Company had sold all the lands for which purchasers could be found willing to purchase in tracts of 160 acres. (8) That on February 27, 1896, and on three subsequent dates in said month, the United States commenced certain suits in the Circuit Court of the United States for the District of Oregon against parties, including the appellant herein, to recover certain of the lands described in the present suit, and the decision in each of those cases constitutes a bar to the present suit, and by the institution of said suits, and the acquiescence of the United States in the decree, the United States waived any and all rights which it might have had to assert title to the lands described in the bill, and is estopped from asserting title thereto.

Upon the issues so framed and the testimony in the case, the court below held that the grant was not made upon condition subsequent, but that it contained certain enforceable covenants which had been violated by the appellant and certain of its predecessors in interest. The decree enjoined the

appellant from selling the lands, or any part thereof, or any timber thereon, in quantities greater than one quarter section to one person, or for a price exceeding $2.50 per acre, and from cutting or removing the timber on any of said lands, except in connection with the sale of the land bearing the timber, and enjoined it from making any disposition of any of said lands, or of the timber thereon, until Congress should have a reasonable opportunity to make provision by legislation for the disposal of the same, in accordance with such policy as Congress might deem fitting under the circumstances, and at the same time secure to the appellant the value that the granting act conferred upon the state of Oregon, and decreed that, in case of the failure of Congress so to act, the appellant might apply to the court within a reasonable time for modification of so much of the injunction as forbids any disposition of said lands or timber, until Congress shall act; the court reserving the right to modify the decree in that regard. And the court decreed that "the government shall have the right to apply to the court at any time hereafter for an accounting as to all moneys received by the appellant on account of lands included in the granting act," for which purpose the court retained jurisdiction.

Dolph, Mallory, Simon & Gearin, of Portland, Or., for appellant.

Constantine J. Smyth, Sp. Asst. Atty. Gen., of Washington, D. C., for the United States.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The principal question involved concerns the construction of the first and second provisos of the granting act. The appellant insists that those provisos must be read together with section 5, and that when so read it will appear that the second proviso refers only to sales made during the first five years, and was not intended to apply to sales made after the completion of the road. To this we are unable to assent. The terms of the provisos are plain. They express clearly the intention of Congress that the lands granted were to be used for but one purpose, which was the construction of the road, and that they should be sold in quantities not greater than 160 acres, and not to more than one person, and at a price not to exceed $2.50 per acre. Section 5 contains nothing that modifies section 1. It prescribes that, when the Governor shall certify to the Secretary of the Interior that 10 continuous miles of the road are completed, 30 sections of the granted lands may be sold, "and so on from time to time, until said road shall be completed, and if said road is not completed within five years no further sale shall be made, and the lands remaining unsold shall revert to the United States." None of the provisions of section 5 is repugnant to any of the provisions of section 1, and full force and effect may be given to both. But the appellant contends that in any view of the proviso it is a covenant only, and is not enforceable against the appellant. The same contention was made, but was denied by the court, in Oregon & Cal. R. R. v. United States, 238 U. S. 393, 35 Sup. Ct. 908, 59 L. Ed. 1360. We think no distinction can be made to the detriment of the interest of the appellee in the present case between the provisos in the grant involved in that case and those in the grant involved in this.

It is suggested that a material difference is to be found in the fact that in the Oregon & California grant it was provided that the land

should be sold to "actual settlers" only, while no such provision is found in the grant in question in this suit, and the argument is made that in the latter grant there is absence of evidence of governmental policy looking to the encouragement of settlers to go upon the land and settle up the country, that actual settlement was neither provided for nor contemplated, and that hence the proviso in the present act lacked the dominant purpose of the proviso in the Oregon & California grant. In the case just cited the Supreme Court said of the provisos there involved: "They are covenants and enforceable." The provisos in the act here under consideration are likewise "covenants and enforceable." In that case the court held also that the building of the railroad was the primary purpose of the acts of Congress, and that the secondary purpose was the settling up of the country. The same may be said of the act here under consideration. For what purpose did Congress enact that the land should be sold in quantities not less than 160 acres and at a price not to exceed $2.50 per acre, and that two sales should not be made to one person, if it were not for the purpose, made manifest in all the railroad land grants of that period, to distribute the lands to settlers, to open up the country to settlement and cultivation, as well as to prevent the acquisition by corporations of large tracts of the public domain to be held for speculation and sold at enhanced values? To dispose of the lands according to the terms of the grant would have been, not only to encourage the settlement of the lands sold, but to assist in the settlement of the ungranted sections. As was said in Winona & St. Peter R. R. v. Barney, 113 U. S. 618, 625, 5 Sup. Ct. 606, 610 (28 L. Ed. 1109):

"The policy of the government was to keep the public lands open at all times to sale and pre-emption, and thus encourage the settlement of the country."

It is not true, therefore, that when the road was built the government had no further interest in the lands, nor in the disposal of them.

The appellant, as a further reason for holding the proviso void, asserts that the lands could not have been sold in 160-acre tracts. On the trial certain witnesses for the appellant testified that the great body of the land could not have been sold in 160-acre tracts for any sum. There was much testimony to the contrary, however, and there was evidence that the predecessors in interest of the appellant withdrew the lands from sale, refused applications to purchase, and from the very inception of their rights persistently denied that the lands were subject to the proviso contained in section 1 of the granting act. There was evidence that if the appellant and its predecessors in interest had offered the lands for sale, or had made efforts to sell the same in accordance with the terms of the grant, a large portion thereof could have been sold to settlers. As far as this appeal is concerned, however, the question is not important, for under the ruling in the Oregon & California Case it follows that, if the grantee found the terms of the grant impossible of performance, it was not justified in violating the provisions of the act, but its remedy was to apply to Congress for remedial legislation.

[2] The defense. that the appellant is a bona fide purchaser for value has not been sustained. To establish that defense the burden rested upon the appellant to make satisfactory proof of its purchase without notice, its payment of value, and its bona fides. Tobey v. Kilbourne, 222 Fed. 760, 138 C. C. A. 308; Cooper v. United States, 220 Fed. 871, 136 C. C. A. 501; United States v. Brannan, 217 Fed. 849, 133 C. C. A. 559; United States v. De Moines, 142 U. S. 510, 12 Sup. Ct. 308, 35 L. Ed. 1099. That the Wagon Road Company had no power to sell the lands in gross was plainly apparent in the terms of the original grant. The appellant was chargeable with notice· of the provisions of that act, notwithstanding that patents had issued from the United States. Although the patents purported to convey the land in fee, the title was nevertheless subject to the terms of the congressional grant, and indeed each patent recited that it was issued in pursuance of that act. That act was more than a grant. It was a law, and each subsequent purchaser was chargeable with notice of it. Again, each of the mesne conveyances between the Wagon Road Company and the appellant contained the recital that the lands conveyed were part of the lands granted by the act ·of March 3, 1869, to the state of Oregon. In Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 437, 12 Sup. Ct. 239, 246 [35 L. Ed. 1063], the court said that the. purchaser of land "must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice." And the answer of the appellant.in this case shows that the appellant, before purchasing, took care and made due inquiries, for it alleges that before purchasing the appellant "carefully examined all legislation by Congress and the state of Oregon affecting the title, and also examined the patents."

[3] The appellant contends that the government is estopped both by matter in pais and by judgment. The estoppel in .pais .is said to consist in the long delay of the government to institute the suit, and its apparent acquiescence in the action of the Wagon Road Company and its grantees in transferring the lands contained in the grant, and in other facts showing that officers· of the government must have known and approved the manner in which the lands had been dealt with. In the Oregon & California Case the court held that the fact that the actions of the grantee of railroad grant lands were known to the government officials, and that no action was taken in regard thereto does not amount to an estoppel against the· enforcement of covenants in the grant. That decision answers the contention of the appellant here so far as it relates to estoppel in pais. The court therein applied the doctrine of United States v. California & Oregon Land Co., 148 U. S. 31, 13 Sup. Ct. 458, 37 L. Ed. 354, in which it was held that estoppel exists only where the act relied upon is done by an executive officer or agent specially authorized by Congress. There was no affirmative act of any officer of the government with respect

to the title to these lands other than the act of issuing the patents, nor did Congress ever take any action in regard thereto other than to pass the act of 1874 authorizing the issuance of patents.

[4] Of the suits, the bringing of which are said to estop the government from prosecuting the present action, three were commenced in February, 1896, and one in August, 1897. The suits were numbered 2278, 2283, 2284, and 2406. The first suit was brought to recover 40 acres of land which it was alleged had been entered as a homestead prior to the grant, and was therefore not included therein. In the second suit title was alleged to be in the United States, for the reason that one small tract therein described had been reserved from the grant, and 1,099.59 acres of lands therein described lay without the limits of the grant. The third suit, which involved 30,044 acres of land, was brought on the theory that the lands were outside the limits of the grant, and were within the overlap of the prior grant to the Oregon & California Railroad Company, and were therefore erroneously patented to the Wagon Road Company. The fourth suit was brought to recover $2.50 per acre for the 1,099.59 acres involved in the second suit, on the ground that the patents thereto had been erroneously issued; it being alleged that those lands had been entered under the homestead and pre-emption laws of the United States prior to the grant. It is true that in some of those suits reference was made in the pleadings to the terms of the grant, and in the case last referred to the defendant was required to answer whether any of those lands had been sold, and, if so, to state the particulars of the sales, whether for cash or deferred payments, and to whom sold, and in the relief sought was a prayer that the grant be construed and a decree entered defining the rights of the parties. But there was no judgment in any of the cases which defined such rights, and no question was presented or decided which in any way affects the present litigation.

In suit 2278 it was adjudged that the 40 acres therein involved had not been homesteaded as alleged in the bill. Suit No. 2283 was dismissed on the defendant's motion after a demurrer had been sustained to the complainant's replication, and the government had refused to plead further. In suit 2406 the small tract alleged to have been reserved from the operation of the grant was canceled, and the United States obtained a decree against the defendant for $1,099.59, or $1 per acre for the lands alleged to be without the limits of the grant. In none of those cases did the government seek to establish title to any of the lands herein involved, or to compel the observance of the covenants contained in the grant. The most that can be said for the prior suits is that in some of them the questions which are here involved might have arisen and might have been litigated. But the purpose of those suits was different from the purpose of the present suit, and the causes of action were different. The present suit was brought to enforce the law of the grant, and the covenant of the grantee, and the prior suits operated as an estoppel only to the points or questions actually litigated and determined therein. Nesbitt v. River-

side Independent District, 144 U. S. 610, 12 Sup. Ct. 746, 36 L. Ed. 562.

We find no error. The decree is affirmed.

ROSS and HUNT, Circuit Judges (concurring). The bill shows on its face that it was brought to obtain a decree adjudging the grant forfeited, restoring the title to the United States, and confirming and quieting it as against any right, title, interest, or claim by or on behalf of the defendant to the suit, or any person claiming or to claim under it, and meanwhile to restrain the defendant from selling, conveying, or in any manner encumbering any of the land.

But the bill also contained a prayer for such other and further relief as the equity of the case should require, and while the court below very properly, in our opinion, in view of the fact that the record shows that the grant had been fully earned by the building of the road within the time fixed by the grant, and many years before the bringing of the suit, refused to decree a forfeiture of any of the land, but enjoined the defendant, its officers and agents, from selling or making any disposition thereof, or of the timber, materials, or other deposits thereon or therein "until Congress shall have a reasonable opportunity to make provision by legislation for the disposition of said lands, timber, mineral or other deposits in accordance with such policy as Congress may deem fitting under the circumstances, and at the same time secure to the defendant all the value that the granting act conferred upon the state of Oregon or the Wagon Road Company," with a provision to the effect that should Congress fail to act in the premises within a stated period the defendant might apply to the court for a modification of the decree, the court reserving jurisdiction for that purpose. The main basis of the court's ruling, as appears from its opinion, was the decision of the Supreme Court in the case of Oregon & Cal. R. R. v. United States, 238 U. S. 393, 35 Sup. Ct. 908, 59 L. Ed. 1360. A careful examination of the opinion in that case satisfies us that its doctrine, applied to the facts of the present case, authorized and required the decree that was entered by the court below, which was permissible under the prayer for general relief.

The grant in question being made "upon the condition that the lands shall be sold to any one person only in quantities not greater than one quarter section, and for a price not exceeding two dollars and fifty cents per acre" (section 1, Act of March 3, 1869), and the grant being a law as well as a grant, bona fide purchasers must be held to have taken with notice of it, especially as the state of Oregon, in transferring the grant to the Wagon Road Company, in express terms did so "upon the conditions and limitations" stated therein. In respect to the former suits brought by the government regarding some of these lands, we concur in what is said in the opinion.