## CHANSLOR–CANFIELD MIDWAY OIL CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 3, 1920.   Rehearing Denied July 6, 1920.)

### No. 3364.

1. **Equity ⚖39(1)—In suit to restrain waste, will retain jurisdiction to determine rights of parties.**

   Where the legal title to an oil placer mining claim remains in the United States, but defendants, wrongfully as claimed, are in possession and extracting the oil therefrom, equity has jurisdiction of a suit to stop the waste, and having done so, under equity rule 23 (198 Fed. xxiv, 115 C. C. A. xxiv), will determine the right to possession and grant appropriate relief.

2. **Mines and minerals ⚖36—Oil location held invalid.**

   The location of an association oil placer claim by one as agent for eight others, seven of whom had no knowledge of it and refused to have the expense, but at request of the locator conveyed their interest to the eighth, who was a relative of his and later conveyed to him without consideration, *held* fraudulent in law and void, and to invest him with no rights which he could convey to others.

3. **Estoppel ⚖62(5)—United States not estopped by laches of officers or agents.**

   The United States is not estopped by acts of its officers or agents, and as a general rule their laches or negligence is no defense to a suit by the government to enforce a public right or protect a public interest.

4. **Mines and minerals ⚖7—Trespasser cannot acquire title by possession and working of claim.**

   Rev. St. § 2332 (Comp. St. § 4631), providing that possession and working of mining claims by the owners or their grantors for a period equal to the time prescribed by the statute of limitations for mining claims of the state shall be sufficient to establish the right to a patent, has no application to the case of a trespasser on public land, title to which cannot be acquired under the mining laws.

5. **Courts ⚖363—Mines and minerals ⚖36—Interest, under state law, allowable from date of conversion of oil from public land.**

   Where, in a suit for accounting, the United States recovers the value of oil wrongfully extracted from public lands under an invalid location, the allowance of interest is within the discretion of the court, in the absence of statute; but where, under the state statute, a recovery for conversion includes interest from the date of conversion, interest should be from that date.

   Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; Maurice T. Dooling, Judge.

Suit by the United States against the Chanslor-Canfield Midway Oil Company and others.   Decree for complainant (266 Fed. 142) from which defendants appeal, and plaintiff cross-appeals.   Modified and affirmed.

This suit is to restrain waste and depletion of the oil contents of a certain described quarter section of public lands, to obtain an injunction against defendants from asserting title or interest in the lands, from trespassing thereon, for an accounting, for the appointment of a receiver, and other equitable relief. The land is included within the area prescribed by the withdrawal order of the President of the United States dated September 27, 1909.

On January 1, 1903, the land had been claimed as an oil placer mining claim

by an association of eight persons in whose names the defendant Hall had posted notices of location. The notices of location were filed for record January 28, 1903, at the request of Jane Stokes, one of the named locators. The next day, January 29, 1903, all of these persons, other than Jane Stokes, transferred such interests as they may have had to Jane Stokes, who thereafter, in July, 1908, transferred to the defendant Hall. On January 12, 1909, Hall made a development contract with the Chanslor-Canfield Midway Oil Company, defendant below and an appellant here, under which the oil company claims herein. By the contract Hall retained to himself one-half of the quarter section, which half he subsequently conveyed to the defendant appellant Recovery Oil Company; the deed being dated December 31, 1910.

The defendants joined issue and set up: (1) That the action is one in ejectment by the United States out of possession against defendants in possession, and for damages for trespasses, and that a court of equity has no jurisdiction; (2) that the act of Congress of June 25, 1910, the so-called Pickett Act (Comp. St. §§ 4523–4525), gave to the Chanslor-Canfield Company and to Hall a right to continue in occupation of the lands and to prosecute their work to a discovery, and thereupon to have patent, and to that extent abrogated whatever effect the September 27, 1909, withdrawal order had on the lands; (3) that the entry of the lands and the development thereof was pursuant to invitation of the United States, under a policy established long before September 27, 1909, and was on said date a rule of property, and thereafter, by act of Congress approved June 25, 1910, recognized by Congress by the making of the President's order of temporary withdrawal, dated September 27, 1909, wholly inoperative as to the lands described in the complaint; (4) that the company was a bona fide purchaser of the north half of the lands involved, and without notice or claim of fraud made by the United States.

The District Court denied motions to transfer the case to the law side of the court and to dismiss, retained jurisdiction, heard evidence, appointed a receiver, and decreed that the lands belonged to the United States, free of all claims of any of the appellants, gave the United States judgment in damages for $76,751, and decreed that all fixed improvements upon the lands belonged to the United States and should be turned over.

The United States is a cross-appellant, alleging error in the action of the District Court in allowing interest upon the value of oil extracted only from the date of the appointment of the receiver, and in refusing to allow costs to the United States.

U. T. Clotfelter, of Los Angeles, Cal., and Morrison, Dunne & Brobeck and Peter F. Dunne, all of San Francisco, Cal., for appellants.

Henry F. May, Sp. Asst. Atty. Gen., and Charles D. Hamel, Sp. Asst. U. S. Atty., of San Francisco, Cal., for the United States.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] We first consider the question of jurisdiction. As stated, the suit was brought in equity to restrain continuing waste and depletion and for other relief, including accounting and adjudication that the property belongs to the United States free and clear of all claims of appellants.

Rule 22 of the Equity Rules (198 Fed. xxiv, 115 C. C. A. xxiv) provides:

"If at any time it appear that a suit commenced in equity should have been brought as an action on the law side of the court, it shall be forthwith transferred to the law side and there be proceeded with, with only such alterations in the pleadings as shall be essential."

By an act approved March 3, 1915 (section 274a, Judicial Code [Comp. Stat. § 1251a]) it is provided:

"In case any of said courts shall find that a suit at law should have been brought in equity, or a suit in equity should have been brought at law, the court shall order any amendments to the pleadings which may be necessary to conform them to the proper practice. Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court. The cause shall proceed and be determined upon such amended pleadings. All testimony taken before such amendment, if preserved, shall stand as testimony in the cause with like effect as if the pleadings had been originally in the amended form."

Rule 23 of the Equity Rules (198 Fed. xxiv, 115 C. C. A. xxiv) is as follows:

"If in a suit in equity a matter ordinarily determinable at law arises, such matter shall be determined in that suit according to the principles applicable without sending the case or question to the law side of the court."

Construing these rules together with the statute, we understand that a suit in equity shall not be tried by piecemeal, but is to be proceeded with on the side in which the suit was properly brought; that is to say, if it should have been brought as an action at law, under rule 22 the court should make an order of transfer to the law side, to the end that the action may be proceeded with upon the law side. If the suit is one properly to be brought before a court of equity, it should remain upon the equitable side and there tried. On the other hand, if, in the course of the suit begun in equity, matters should arise which would ordinarily have to be determined at law, such matters shall be determined without sending the case to the law side of the court. El Dora Oil Co. et al. v. U. S., 229 Fed. 946, 144 C. C. A. 228. Applying the rule to a case where there is a serious controversy as to the title and the party in possession is holding adversely, plaintiff's remedy is at law and not in equity. But where the title and right to possession is clear, and the defendant is wrongfully in possession, extracting mineral from the land, and thus is practically consuming the substance of the estate, jurisdiction is in a court of equity to stop such waste, and, after having interfered to stop the waste, the court will determine the rights of the parties before it. Remedy at law for possession and to recover damages for the trespass is in plaintiff, but such remedy is not adequate, by no means as practical and as efficient as a remedy in equity. Magruder v. Belle Fourche, etc., Association, 219 Fed. 72, 135 C. C. A. 524. In Johnston v. Corson G. M. Co., 157 Fed. 145, 84 C. C. A. 593, 15 L. R. A. (N. S.) 1078, there was a serious controversy as to title; hence the case is distinguished from the instant one.

There is no controversy as to where the legal title to the property here involved rests; and if the defendants have no right to the oil in the lands or to the possession thereof as against the United States, then certainly remedy at law is inadequate to prevent injury of an irreparable character being done to the land, even to the destruction of the value thereof.

Again, the trespasses complained of appear to have been continuous, and if defendants should remain in possession they will continue to destroy the substance of the estate by the extraction of the oil, and

will render plaintiff's ownership valueless. In such a case a court of equity will restrain, and will also retain the suits for an accounting and satisfaction for injuries already done. Graves v. Ashburn, 215 U. S. 331, 30 Sup. Ct. 108, 54 L. Ed. 217; Goldschmidt Thermit Co. v. Primos Chemical Co. (D. C.) 225 Fed. 769; Gatewood v. New River Con. Co., 239 Fed. 65, 152 C. C. A. 115.

[2] Passing to the merits, these facts appear: On January 1, 1903, the notice of location relied upon was posted, and the location certificate recorded January 28, 1903. On January 29, 1903, seven of the eight locators, for a consideration of $10 each, conveyed their rights, title, and interests to Jane Stokes, who was the eighth locator, and who was the mother-in-law of appellant Fred H. Hall. In July, 1908, Mrs. Stokes for a nominal consideration conveyed all her right, title, and interest to her son-in-law, Hall, and he in turn on January 12, 1909, made a contract with the Chanslor-Canfield Midway Oil Company. Upon the trial all of the locators, except one who died before the suit was tried and Mrs. Stokes, an aged lady, testified. Each said in effect that he had no definite recollection of the location of the claims or of the subsequent transfer, although, when shown the deed bearing his name, each admitted that he conveyed to Mrs. Stokes as appeared by the deeds introduced in evidence.

The locators testified they had no recollection of any of the particulars connected with the matter. One said that he had a faint recollection of going to the office of a notary and signing "something"; that evidently this was done at the request of Hall; that he never paid out any money for fees or other expenses, never received anything of value in connection with the transaction, and never had any intention of acquiring any interest in oil lands in Kern county; that he had a faint recollection of some one asking permission to use his name in making a location, and now felt that he had given that consent, but could not swear positively to whom the consent was given; that he never had inquired into the value of the land, and never had paid any expenses in connection with the location of it. In substance, the other locators testified to the same effect. All of the locators denied that any agreement concerning the transfer of the property or rights had been made in advance.

Hall testified that he located the land for the eight persons because he had been in that section for some time and had located land for an association of which he was one; that he was approached by a number of people, asking him to locate oil for them, and that he spoke to a number of persons with whom he had a personal acquaintance, including some of the locators referred to in this litigation, but he could not say which ones; that those with whom he talked were unwilling to contribute toward the expenses of making the location, because they thought the land was worthless; that he made the location, and the day after recording such location certificates the locators made the deeds to Mrs. Stokes, who was a member of his household; that he had knowledge that the deed was to be executed to Mrs. Stokes, but that he did not recall whether he advised the execution of such a deed; that when he made the location he expected

reimbursement, and had no intention to acquire the land for himself; that there was no agreement or understanding of any kind by which the interests of the locators were to be his; that at the time of the location he had no interest in the claims, and that the locators were not dummies used by him to gain 160 acres for himself.

Under this evidence we think that the District Court was correct in its opinion that:

"The paper location was made on January 1, 1903, by Fred Hall in the name of Mrs. Stokes, his mother-in-law and a member of his family, and seven of his neighbors. The alleged locators did not know of the location at or prior to the time it was made, and when subsequently advised thereof declined to assume or pay any part of the expenses incident thereto, or to accept or ratify the same, but on January 28, 1903, no doubt at the request or suggestion of Hall, they executed a deed conveying their interests, if any, to Mrs. Stokes in trust for Hall."

It appears to have been a common practice for one person, acting as agent and under power of attorney for another, to make a location upon oil lands. Whether such a location is valid need not be discussed. We may assume it is, and even go so far as to assume that such a location can be made without a power of attorney, or without the knowledge on the part of the person whose name is used that a location had been made for him, provided, always, the person whose name has been used acquires knowledge of the fact of the use of his name and ratifies the act of the person who has made the location. But, notwithstanding these assumptions, the appellants are not aided, for the locators whose names were used by Hall did not know of Hall's intended use of their names to locate the lands involved, and when told that their names had been used every one of them refused to contribute to the perfecting of such locations, or to do any act toward holding the location made by Hall. However, when requested to sign deeds conveying to Mrs. Stokes whatever rights they might have, they did so at Hall's request. For about five years nothing was done upon the claims. But at the expiration of that time Hall took an assignment from Mrs. Stokes and proceeded to make a contract with the Chanslor-Canfield Midway Oil Company. The contract taken was wholly in Hall's interest; it was made without regard to any possible rights of any of the locators of the claims and without consideration of any rights that any of the locators might have had.

How can such a location be sustained as valid? We have no doubt there was no willful fraud on the part of the locators themselves; but, even so, it is perfectly plain that no one of them had any intention whatever of taking up or developing a claim upon the public lands. They were not bona fide occupants or claimants, and, although guiltless of active, positive fraud, each must be charged with a knowledge that he or she had no rights, and had no authority to make the deed to Stokes. Hall knew that the locators whose names he used refused to pay any money or to take any interest in the property, and as a consequence he acted wrongfully when he took deeds of rights which the so-called locators had acquired. No inference appears to be rea-

sonable, except that Hall made the pretended location purely in the interests of himself, or possibly some one other than the locators themselves. In Nome & Sinook v. Snyder, 187 Fed. 385, 109 C. C. A. 217, this court said:

"Any scheme or device entered into whereby one individual is to acquire more than that amount [20 acres] or proportion in area constitutes a fraud upon the law, and consequently a fraud upon the government, from which the title is to be acquired, and any location made in pursuance of such a scheme or device is without legal support and void. The proposition seems to be well established."

If further evidence of Hall's purpose were necessary, it is found in the circumstance of the quick transfer to Mrs. Stokes, his mother-in-law and a member of his family, and who, without doing any work upon the claims, held them until July, 1908, when Hall, without paying her anything, took title to the property, and soon thereafter made the contract for development.

We are satisfied that no legal title was ever passed, and that the locations were wholly invalid, and that the District Court was right in so holding. Hall gained nothing by taking the transfer to Mrs. Stokes, and thereafter from her to himself, and acquired no right or interest in the property. Therefore he could convey nothing, and could make no contract of development with the Chanslor-Canfield Company. Nome & Sinook v. Snyder, supra. Nor can the Recovery Oil Company assert rights under a contract with Hall, claiming through the same locators, under date of December 21, 1910. After careful consideration, our judgment is that the locations were void, and that appellants have no standing in court.

[3] It is argued in the brief of the appellants that the doctrine of estoppel should be applied as against the United States, because the agents of the government had full knowledge of the situation, and not only refrained from advising people, but induced them to proceed and expend money in good faith. In Utah Power & Light Co. v. United States, 243 U. S. 389, 37 Sup. Ct. 387, 61 L. Ed. 791, and Southern Oregon Co. v. United States, 241 Fed. 16, 154 C. C. A. 16, and Pine River Logging & Improvement Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164, it has been laid down that the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement to do or cause to be done what the law does not sanction or permit, and, furthermore, that as a general rule laches or neglect of the United States on the part of officers of the government is no defense to a suit by the government to enforce a public right or protect a public interest.

[4] It is also said that appellants Hall and the Chanslor Company acquired title to the land and a right to patent thereto independent of the location charged as being fraudulent. Appellants base this contention on section 2332 of the Revised Statutes of the United States (Comp. St. § 4631), which so far as pertinent reads:

"Where such person or association, they or their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the state or territory where the same may

be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim."

But the statute just referred to is a part of the statutory chapters on mineral and mining resources, having to do with the evidence which will be regarded as sufficient to establish the right of one in possession and who has worked a mining claim to obtain a patent. The statute is based upon the premise that the lands had been open to entry and could be patented under the mining laws of the United States. It was not enacted as a statute of limitation, and has no application in the case of a trespasser on land, title to which cannot be acquired under the laws of the United States. Harris v. Equator Mining Co. (C. C.) 8 Fed. 863.

[5] In the cross-appeal it is contended by the United States that the court erred in refusing to allow interest upon oil extracted from the date of conversion. The oil which was extracted after a receiver was appointed, or the value of it, came into the possession of the receiver and was awarded to the United States; there was also awarded to the United States the value of oil taken by each defendant prior to the receivership (less cost of extracting and marketing the same); but the court declined to allow interest upon the value of the oil so taken, except from the date of the appointment of the receiver. The receiver was appointed October 31, 1915, and the oil was found to have been converted at various dates, viz., by the Chanslor Company from September, 1910, and by the Recovery Company from October, 1911, as is detailed by statements of account incorporated in the record. Interest was allowed on the value of the oil so converted at the rate of 7 per cent., but only from the date of the appointment of the receiver, and not from the date of conversion. In Hammond v. United States, 246 Fed. 40, 158 C. C. A. 266, it was held that, in the absence of a statute, in cases of conversion interest is not recoverable as a matter of right, but that the question is for determination by the jury. This being the rule in an action at law, it is but fair to hold that in a suit in equity, in the absence of a statute, allowance of interest is within the discretion of the court.

In Montana Mining Co. v. St. Louis Mining & Milling Co., 183 Fed. 51, 105 C. C. A. 343, we held that, inasmuch as the statute of Montana provided that damages for the wrongful conversion of property should be the value of the property at the time of its conversion, with interest from that time, a plaintiff, entitled to a verdict for ore converted, was entitled to interest upon the value of the ore from the date of the conversion. Drumm-Flato Com. Co. v. Edmisson, 208 U. S. 534, 28 Sup. Ct. 367, 52 L. Ed. 606, was cited in support of the rule. In California interest at the rate of 7 per cent. is allowable on moneys received to the use of another and detained from him (section 1917, Civ. Code), and by section 3287 of the Civil Code every person entitled to recover damages certain, or capable of being made certain by calculation, is entitled also to recover interest thereon from that day. Section 3336 of the California Code of 1917 is identical with the statute of Montana quoted in Montana Mining Co.

v. St. Louis Mining & Milling Co., supra, where the court ruled as heretofore stated. From this we gather that, as the statute of the state of California allows interest upon the value from the date of conversion, interest should have been allowed accordingly in the present case.

It is also urged by counsel for the United States that the court erred in refusing to allow costs, in that there are no circumstances shown which justified the court in refusing to allow costs to the United States. But the fact that the superior equities are with the United States, and it has been necessary for the protection of its rights that the present suit should be brought, does not warrant us in ruling that the discretion of the District Court was abused in refusing to award costs to the United States.

The decree is affirmed, except as to the allowance of interest upon the value of the oil converted. The decree will be modified, so as to allow interest upon the value of the oil from the date of conversion.

Modified and affirmed.

ROSS, Circuit Judge, dissents.