[No. 7502.    *En Banc.*    March 3, 1910.]

NATIONAL MILLING & MINING COMPANY, *Respondent*, v. JAMES PICCOLO, *Appellant*.[1]

MINES AND MINERALS—CLAIMS—RELOCATION—REQUISITES.    Relocators of abandoned mining claims west of the summit of the Cascade mountains need not sink a discovery shaft, under Rem. & Bal. Code, § 7366, providing that the provisions of the act relating to discovery shafts shall not apply to any mining location west of the summit of the Cascade mountains; since said exception is not confined to §§ 7358 and 7359, prescribing the duties of the discoverers of an original claim and providing that he shall sink a discovery shaft, but applies also to § 7355 of the act which provides that the relocation of forfeited or abandoned quartz or lode claims shall only be made by sinking a new discovery shaft and fixing new boundaries

[1]Reported in 107 Pac. 353.

as required in making a new location, or the relocator may sink the original discovery shaft ten feet deeper than it was (overruling *Id.*, 54 Wash. 617).

CHADWICK, FULLERTON, MOUNT, and GOSE, JJ., dissent.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered November 19, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover the possession of mining claims.  Reversed.

*Kirkpatrick & Doty* and *Morris, Southard & Shipley,* for appellant.

*J. H. Naylor* and *Merrick & Mills,* for respondent.

## ON REHEARING.

DUNBAR, J.—This case was heard in Department One, and a decision rendered and filed September 25, 1909, reported in 54 Wash. 617, 104 Pac. 128, where a detailed statement of the case is given which we will not repeat here. Upon petition a rehearing was granted, to be heard *en banc.* On the rehearing somewhat extensive briefs were presented by counsel on both sides, the appellant contenting itself with arguing only the question of the construction of the statute under which it was determined that the appellant had not complied with the provisions of the law in relation to the sinking of shafts, etc.  The respondent, in its brief, asks the court not only to affirm its previous decision in that regard, but also to enter again upon an original investigation of the statement of facts and upon an investigation of all the questions presented at the original hearing.

In consideration of the view we have taken upon the statutory question, and considering the fact that the appellant in this case seems to have no actual equities but is standing strictly upon his legal rights, we have again examined the voluminous record in this case.  But after such an examination we are convinced that there is no escape from the conclusion reached by the court in the original opinion, that

the findings of fact did not justify the conclusions of law reached by the lower court or, to quote approvingly the words of the writer of the opinion:

"The court's findings show in detail what was done by the respondent towards doing the assessment work for the year 1905. These findings, in our opinion, do not justify the conclusion that the respondent did work enough to save the claims from forfeiture, had a valid location of the ground intervened between January 1, 1906, and the time the appellant ousted the respondent therefrom."

But, said the court,

"The findings make it clear that no valid location intervened. While the notices were properly posted and the claim properly marked on the ground by the appellant, there is no finding or evidence that the notice complied with the statute, or that the location was completed by sinking a discovery shaft on the lode of the claim;"

the court holding that the section of the law wherein it is announced that the provision relating to discovery shafts shall not apply to any mining location west of the summit of the Cascade mountains did not excuse the sinking of the shaft in this case, on the theory, it seems, that the proviso applies only to original locations where there is a discovery, but not where there was an attempt to take advantage of a forfeiture; that in the latter case the shaft must be sunk to complete the location.

Upon further and mature consideration, we are unable to place this construction upon the statute. We will not enter into a discussion of the many cases cited by the appellant or a discussion of the Federal laws governing mining claims and operations, for it may be conceded that, under the Federal authorities, the location of the appellant was sufficient, and it is conceded that Federal authorities are not exclusive, and that power is left in the state to make laws and regulations governing the location of mining claims. So that it is sufficient in this case to place a construction upon our own statute in that regard. Chapter 45 of the Laws of 1899,

page 69 (Rem. & Bal. Code, § 7358 *et seq.*), entitled: "An act providing for the manner of locating and holding lode and placer mining claims, prescribing authority of mining districts," prescribes in section 1 the duties of the discoverer of the lode. Section 2 provides that:

"Before filing such notice for record, the discoverer shall locate his claim by first sinking a discovery shaft upon the lode, to the depth of ten (10) feet from the lowest part of the rim of such shaft at the surface, and shall post," etc. Rem. & Bal. Code, § 7359.

Section 8 provides as follows:

"The relocation of forfeited or abandoned quartz or lode claims shall only be made by sinking a new discovery shaft and fixing new boundaries in the same manner and to the same extent as is required in making a new location, or the relocator may sink the original discovery shaft ten feet deeper than it was at the date of commencement of such relocation," etc. Rem. & Bal. Code, § 7365.

Section 9:

"The provision herein, relating to discovery shafts, shall not apply to any mining location west of the summit of the Cascade mountains." Rem. & Bal. Code, § 7366.

Can the proviso of § 9 be limited to the provisions of §§ 1 and 2 without applying to the provisions of § 8? It is contended that the word "only," in the second line of § 8, where it is said that the relocation of forfeited or abandoned quartz or lode claims shall "only" be made by sinking a new discovery shaft, lends color to the contention, and if this were the only qualification for obtaining title by relocation of forfeited or abandoned claims, the contention might possibly be sustained. But considering the whole section together, in our judgment it simply means that the relocation of forfeited or abandoned quartz or lode claims shall only be made in the same manner as is provided for in the former section; for the direction continues, "and fixing new boundaries in the same manner and to the same extent as is required in making a new location," etc. Then follows the

statement that the provision relating to discovery shafts shall not apply to any mining location west of the summit of the Cascade mountains. The language is clear and comprehensive applying to any mining location, and a mining location of a forfeited or abandoned quartz claim is as much a location as an original discoverer's location. To hold that § 9 applied in one instance and not in the other would be to eliminate from the law its most comprehensive provisions.

Abiding, then, by the announcement originally made, that the findings of the court do not justify the conclusion that the respondent did work enough to save the claims from forfeiture had a valid location of the ground intervened between January 1, 1906, and the time the appellant ousted the respondent therefrom, and construing the statute as releasing the appellant from the duty of the provisions in relation to discovery shafts, we are compelled to hold that the judgment of the lower court should be reversed, and it is so ordered.

RUDKIN, C. J., CROW, MORRIS, and PARKER, JJ., concur.

CHADWICK, J. (dissenting)—To dissent from the majority opinion may be redundant in the light of what was said by Judge Fullerton when the case was first decided, 54 Wash. 617, 104 Pac. 128. It does seem to me that the majority in its endeavor to follow the letter of the law have utterly ignored its pretense and spirit. It is not explained why, if the construction put upon § 8 is proper, it was ever enacted at all. A very certain test of a statute, when of doubtful meaning, is to refer to the reasons prompting its enactment. It will require no argument to convince the reader that § 8 is useless cargo, serving no possible purpose, unless it was written to serve the purpose set out and explained in Judge Fullerton's opinion. The majority opinion reads the word "only" out of § 8, saying:

"It is contended that the word 'only,' in the second line of § 8, where it is said that the relocation of forfeited or abandoned quartz or lode claims shall 'only' be made by sinking a new discovery shaft, lends color to the contention, and if

this were the only qualification for obtaining title by relocation of forfeited or abandoned claims, the contention might possibly be sustained.   But considering the whole section together, in our judgment it simply means that the relocation of forfeited or abandoned quartz or lode claims shall only be made in the same manner as is provided for in the former section."

Right here the opinion is at fault.   The whole section is *not* considered together; else why is no mention made, or construction attempted, of the last clause of the section, which reads as follows:

".   .   . in either case a new location monument shall be erected and the location certificate shall state if the whole or any part of the new location is located as abandoned property?"

The statute undertook to put upon the one who claims mining ground as abandoned or forfeited a burden that was not imposed upon an original locator; and properly so, for the one who takes abandoned ground takes more than the mere land.   He reaps the reward of another's foresight and industry.   Section 8 declares that he shall do more than file upon the land.   It requires some evidence of good faith.   It puts the burden of proving the abandonment or forfeiture on the relocator, whereas, under the opinion of the majority, the burden of proof would be upon the one who is put to the necessity of ejecting the intruder.   To save § 9, which is written in the singular and evidently refers to § 2 of the act, the majority has held § 8 for naught, notwithstanding it most clearly appears to be an exception to the statute and in no wise conflicts with its general provisions.   Although the words "discovery shaft" are used in § 8, they should not be held to refer to an original discovery such as is provided for in § 2, and as referred to in § 9.   The word "discovery" is superfluous.   This is made manifest by the words, "or the relocator may sink the original discovery shaft ten feet deeper than it was at the date of commencement of such re-

location," etc., the law being that he is not bound to make a
new discovery, but is bound to sink ten feet in the ledge.
There is and can be no such thing as a "discovery" where the
shafts, tunnels, bunkhouses, and bins of another are appro-
priated; but there can be, and it was the intent of the law
of 1899 to compel, some expenditure of time and money on
the part of the one who jumps the claim of another. The
object of the law of 1899 was to make claim jumping hard.
The decision of the majority not only makes it easy, but
will incite the mining claim jumper and blackmailer to new
activities.

FULLERTON, MOUNT, and GOSE, JJ., concur with CHAD-
WICK, J.