NOME & SINOOK CO. v. SNYDER.

(Circuit Court of Appeals, Ninth Circuit. May 22, 1911.)

No. 1,907.

1. MINES AND MINERALS (§ 18*)—MINING CLAIMS—LOCATION—AREA—ASSOCIATION.

Under Rev. St. § 2330 (U. S. Comp. St. 1901, p. 1432), providing that no location for a placer mining claim made after July 9, 1870, shall exceed 160 acres for any one person or association of persons, and section 2331 (page 1432), providing that no such location shall include more than 20 acres for each individual claimant, the unit of individual allowance is 20 acres; and where 160 acres is embraced within one location by an association, it must consist of at least eight persons.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 33; Dec. Dig. § 18.*]

2. MINES AND MINERALS (§ 18*)—PLACER CLAIM—LOCATION—AREA.

Under Rev. St. §§ 2330, 2331 (U. S. Comp. St. 1901, p. 1432), limiting placer claims to 20 acres for each individual, and authorizing a location of 160 acres by an association, any scheme or device whereby one individual is to acquire more than that amount or proportion in area, constitutes a fraud on the law, and consequently a fraud on the government, rendering the entire location invalid, so that where a partnership, consisting of five persons, attempted to locate a single claim covering 100 acres, and formed a joint-stock association, by which two of the members acquired only a nominal interest, one less than a fifth, one more than a fifth, and one more than half, the location was void.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 33; Dec. Dig. § 18.*]

In Error to the District Court of the United States for the Second Division of the District of Alaska.

Action by William Snyder against the Nome & Sinook Company. Judgment for plaintiff, and defendant brings error. Affirmed.

On or about June 22, 1909, the defendant filed an application in the United States land office at Nome, Alaska, for patent to mining premises known as the "Snyder Group No. 3," designated as "Survey No. 739," and comprising the Maybel, Loyal Fraction, Snyder, and Troy Bench Fraction claims. To this application the plaintiff filed an adverse, and in due time commenced this action in ejectment to determine its alleged superior and paramount right to the premises. The plaintiff alleges that it is now, and ever since the 24th day of June, 1899, it and its predecessors have been, the owners, seised of the legal estate in fee and entitled to the possession of certain mining premises, consisting of "that certain mining claim commonly known as and called the Pocahontas, Querropas, Ratapan, Seneca, Ticonderoga (also called the Pocahontas)," bounded as in the complaint described. The complaint then sets forth in effect that prior to the date last named the premises were vacant, unoccupied, and unappropriated public mineral lands; that on or about said date William A. Kjellmann, Amasa Spring, Jr., Arthur E. Southward, Jafet Lindeberg, and Alex Jernes associated themselves together under the firm name of Nome Mining & Development Company, Limited, and, being qualified to locate, appropriate, and hold mining claims, "entered upon said premises and duly located and appropriated the same as a placer mining claim"; that they made discovery of gold-bearing mineral within the limits, marked the boundaries, and on February 27, 1899, caused to be recorded a notice of location of said claim; that thereafter by sundry mesne conveyances the plaintiff became the purchaser and owner, and during each year since the date of location plaintiff and its grantors have performed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

187 F.—25

labor and improvements of not less than $100 for the benefit and development thereof. Further than this, appropriate facts are set forth showing that the action is properly instituted in support of plaintiff's adverse claim to defendant's application for a patent. The defendant answered, and the cause went to trial before a jury. At the close of plaintiff's evidence a nonsuit was granted upon the motion of the defendant. This appeal is from the action of the court in that regard.

F. E. Fuller, O. D. Cochran, W. A. Gilmore, Metson, Drew & Mackenzie, and E. H. Ryan, for plaintiff in error.

James W. Bell, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). It is shown by the testimony of Jafet Lindeberg that he, together with Kjellmann, Spring, Southward, and Jernes, formed a partnership called the "Nome Mining & Development Company, Limited, to get mining claims around the vicinity of Nome, Penny river, and outside of that," and that the claim sought to be established by plaintiff is one of the claims located by this partnership. The notice shows that the "undersigned" have located 100 acres of placer mining ground described as Pocahontas, Querropas, Ratapan, Seneca, and Ticonderoga. Then follows a description which runs around all the claims. The concluding part of the notice is as follows:

"Located 24th day of January, A. D. 1899, by Nome Mining & Development Co., Ltd., Amasa Spring, Jr., General Manager."

Attached to the notice is a plat showing the Ticonderoga on the west, next east the Seneca, and east of that the Ratapan, all in square form. The Querropas is still east of the latter, in rectangular form. Each of these are described as containing 20 acres. East of the Querropas, along its northern extremity, is located lot 2, and north of that lot 1, each of which contains 10 acres and is designated the Pocahontas, all containing 100 acres. E. Wallace Smith, who was the agent of the company and was left in charge after the alleged location was made, testified that the locations were not made out as individual locations, nor was each location made separate, but were made in a group.

Generally, it may be said the proof shows that there was a marking of this claim at the time so that it could be readily traced upon the ground. Some of the stakes, however, were planted in snow and others in ice upon a stream. Later in 1907 one Gibson made a survey of the claim, retracing quite closely the boundary of the original location, identifying a number of the original stakes, but by no means all of them. This witness relates that he panned out quite a lot of gold in the spring of 1899 at the mouth of Center creek. It does not appear upon what part of the claim this panning was done. Indeed, it is only by inference that we may know that it was done on the claim at all. Lindeberg says that he discovered gold on the claim in 1899, and panned out some in 1898, and that some leases were given to people to rock on the claim on both sides of Snake river, and especially in a little gully running through Pocahontas No. 2, and that some "Laps" had a privilege of mining down below Pocahontas No. 1, who

reported a great find in the gulch in 1899. This is as near as the evidence discloses the location of the discovery of any gold or other minerals on the° claim anywhere. No evidence was offered to show that assessment work had been done upon the claim at any time subsequent to its location, or that any mining was done thereon since by plaintiff or its predecessors.

The location of defendant's group of claims was made on and subsequent to July 7, 1900.

The principal ground upon which the nonsuit was granted is that the alleged location by the Nome Mining & Development Company, Limited, was void because it was made in pursuance of a scheme by which one person would acquire more area than is allowed by law under one location, and therefore a fraud upon the government.

The strong contention of the plaintiff is that by showing discovery and location it made a prima facie case which ought to have been submitted to the jury. This would be true, waiving mention of the assessment work; but there must be a valid location. Of this we will inquire.

The plaintiff corporation is the successor to the Nome Mining & Development Company, Limited, by mesne conveyances, and claims under it and by virtue of the location that it made. The agreement by which the locating company was formed is before the court. It evidences a joint-stock company, formed by Kjellmann, Spring, Southward, Lindeberg, and Jernes; the stock consisting of 4,000 shares, of which Kjellmann was entitled to 2,050, Spring 1,334, Southward, 614, Lindeberg 1, and Jernes 1, the object being to mine and develop the Cape Nome mining district, Alaska. There was no incorporation of the company; the agreement alone forming the association. Now, this company as a company, not by the members in their individual capacity, made one location of 100 acres; for the notice so states, and the evidence is in confirmation thereof. Under the law an individual cannot acquire more than 20 acres of mining ground by one location; but an association of persons may make joint location of not to exceed 160 acres.

[1] Section 2330 of the Revised Statutes (U. S. Comp. St. 1901, p. 1432) provides that:

"Legal subdivisions of forty acres may be subdivided into ten-acre tracts; and two or more persons, or associations of persons, having contiguous claims of any size, although such claims may be less than ten acres each, may make joint entry thereof; but no location of a placer claim, made after the ninth day of July, eighteen hundred and seventy, shall exceed one hundred and sixty acres for any one person, or association of persons, which location shall conform to the United States surveys."

And section 2331 (page 1432):

" * * * All placer mining claims located after the tenth day of May, eighteen hundred and seventy-two, shall conform as near as practicable with the United States system of public land surveys, and the rectangular subdivisions of such surveys, and no such location shall include more than twenty acres for each individual claimant."

We are to inquire how and in what manner the association of persons may make location of more than 20 acres. In analyzing these

statutes, Mr. Lindley observes that the unit or individual location is 20 acres, and that not more than 160 acres may be embraced within one location by an association of persons, of which there must be at least eight. Lindley on Mines, § 448, p. 790. The Supreme Court of Colorado entertains a like view, for it says in Kirk et al. v. Meldrum, 28 Colo. 453, 460, 65 Pac. 633, 636:

"The construction of the act of Congress with respect to placers has universally been that the act makes provision for such locations, and prescribes the area which may be located; in other words, the area is limited to 20 acres to each locator, and that a number of individuals may locate a claim in common, not exceeding 20 acres to each person, and not exceeding 160 acres in any one claim."

The Land Department, by a published regulation, has so construed section 2331:

"That from and after May 10, 1872, no location made by an individual can exceed 20 acres, and no location made by an association of individuals can exceed 160 acres, which location of 160 acres cannot be made by a less number than eight bona fide locators."

So it is said in Morrison's Mining Rights (13th Ed.) 215:

"It requires eight bona fide locators to lawfully claim 160 acres."

See, also, Costigan on Mining Law, 173.

This court, speaking through Morrow, Circuit Judge, has given its sanction to such interpretation in Cook v. Klonos, 164 Fed. 529, 537, 90 C. C. A. 403, 411, in language both pointed and explicit, as follows:

"The prohibition contained in section 2331 against the location of 'more than twenty acres for each individual claimant' is direct and positive, and limits the amount of ground that any one claimant may appropriate, either individually or in association claim, at the time of the location."

It follows, therefore, with exact logic, that five persons may by means of proper association make valid location of 100 acres in one claim, so that it did not include more than 20 acres to each individual. This does not mean that while the five may, by associating themselves together, locate 100 acres in one claim, one or two of the five can acquire by such location substantially all of the claim, leaving the others with proportionately a very small or nominal interest therein, but that each must acquire an interest not to exceed 20 acres.

[2] Any scheme or device entered into whereby one individual is to acquire more than that amount or proportion in area constitutes a fraud upon the law, and consequently a fraud upon the government, from which the title is to be acquired, and any location made in pursuance of such a scheme or device is without legal support and void. The proposition seems to be well established. Mitchell v. Cline, 84 Cal. 409, 24 Pac. 164; Gird v. California Oil Co. (C. C.) 60 Fed. 532; Durant v. Corbin (C. C.) 94 Fed. 382; Cook v. Klonos, supra.

In the latter case the court says on this subject:

"The scheme of using the names of dummy locators in making the location of a mining claim for the purpose of securing a concealed interest in such claim appears to be contrary to the purpose of the statute; but when this scheme is used to secure an interest in a claim for a single individual, not only concealed, but in excess of the limit of 20 acres, it is plainly in violation

of the letter of the law, and when, as in this case, all the locators had knowledge of the concealed interest and were parties to the transaction, it renders the location void."

Now, in the case under review, the very articles of agreement put the claimant beyond the pale of the law, while the testimony establishes the illegality of the scheme beyond peradventure. The location, although made in the name of the association, two of the parties thereto were to have but a nominal interest in the claim, one less than one-fifth, one largely more than one-fifth, and one more than one-half, giving the latter, of course, more than 50 acres proportionately in the claim. So that, regardless of the discovery, regardless of the marking on the ground, or even the assessment work, the claim was void, and could not avail the locators in any stage. The location being void, the ground remained as if none had been made, and was unappropriated mineral land, subject to location by others. This is sufficient to dispose of the controversy, without passing specifically on the effect of failure to prove that the assessment had been regularly done, or other points made in the brief of counsel.

The judgment of the trial court will be affirmed.