UNITED STATES v. BROOKSHIRE OIL CO. et al. (three cases).

(District Court, S. D. California. June 8, 1917.)

Nos. A–34—A–36.

1. MINES AND MINERALS ⬡�ъл38(21)—LOCATIONS IN GOOD FAITH.

In a suit involving mineral lands, evidence *held* to show that the principal defendant, who made the locations under the placer mining laws, did not act in good faith for the benefit of the alleged locators, but merely used their names with the intent to secure for himself an area of mineral land in excess of that allowed by law.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 107.]

2. MINES AND MINERALS ⬡➪14(2)—LOCATIONS—RIGHTS OF HOLDER.

One in possession under defendant, who made locations under placer mining laws, using the names of the locators merely as a subterfuge to obtain more land than he was entitled to, has no greater rights than defendant.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 19, 20.]

3. MINES AND MINERALS ⬡➪14(2)—PLACER MINES—LOCATIONS.

Under Rev. St. §§ 2330, 2331 (Comp. St. 1916, §§ 4629, 4630), limiting mining claims for associations to 160 acres and for individuals to 20 acres, a location by an individual in the name of others, by which means it was sought to evade the limitations, is void, and furnishes no basis for title.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 19, 20.]

4. MINES AND MINERALS ⬡➪14(2)—PLACER MINES—LOCATIONS—VALIDITY.

Prior to withdrawal by presidential order, defendant, under the laws relating to placer mines, located a claim in the names of third persons, intending in that manner to evade the limitations of the statutes. The claim was supposed to contain oil, and defendant entered into a contract with an oil company for the development of such claim; the contract being in part for defendant's benefit. *Held* that, after withdrawal, the oil company, as it had become defendant's representative, could not assert any rights under Pickett Act June 25, 1910, c. 421, 36 Stat. 847 (Comp. St. 1916, §§ 4523–4525), which undertakes to protect occupants or claimants of oil and gas bearing lands, who were prosecuting work in good faith at the date of the withdrawal order.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 19, 20.]

5. MINES AND MINERALS ⬡➪38(4)—SUIT TO ENJOIN TRESPASS AND WASTE— EQUITY—JURISDICTION.

Locations on mineral lands being void, the United States sued to enjoin and restrain defendants from continuing to trespass upon the land from which they were extracting oil. Defendants, the operators of the wells, disposed of the product to marketing companies, which removed the oil from the premises through their own pipe lines. *Held*, that as such marketing companies asserted no title to the property, and as the basis for a court of equity's jurisdiction was to prevent waste, such marketing companies were not proper parties.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 88.]

6. INJUNCTION ⬡➪189—JURISDICTION—QUIETING TITLE.

A suit to enjoin and restrain a continuation of a trespass, and to prevent waste, begun by the true owner, who was out of possession, cannot be treated and made to serve the purpose of one to remove a cloud from title.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 409.]

⬡➪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suits by the United States against the Brookshire Oil Company, E. D. Burge, and others, and against the Brookshire Oil Company, the Standard Oil Company, and others, and against the Brookshire Oil Company, the Midway Pacific Oil Company, and others. Decree for plaintiff against the principal defendants, and bills against the marketing companies, the Standard Oil Company and others dismissed.

Frank Hall and A. E. Campbell, Sp. Asst. Attys. Gen., both of San Francisco, Cal., for the United States.

C. P. Kaetzel, of San Luis Obispo, Cal., A. L. Weil, of San Francisco, Cal., Theodore Martin, of Los Angeles, Cal., W. B. Beaizley, of Bakersfield, Cal., Willis I. Morrison and Willoughby Rodman, both of Los Angeles, Cal., and Pillsbury, Madison, & Sutro, of San Francisco, Cal., for defendants.

BEAN, District Judge (sitting by special assignment). These three suits involve the northeast, northwest, and southeast quarters of section 24, township 31 south, range 22 east, M. D. M., in the state of California. The land in question is oil-bearing, and is included within the area described in presidential withdrawal order of September 27, 1909.

On November 15, 1908, Mr. E. D. Burge posted on each quarter section a notice prepared by himself, purporting to be on behalf of eight named locaters, evidencing an intention to claim the same under the placer mining laws, and caused such notices to be recorded. The alleged locators were principally relatives of Burge and nonresidents of the state. Burge had no previous authority from them to make such locations, and they did not know of the posting of the notices until after he had contracted for the disposition of the locations. On December 23, 1908, Burge, without consulting the alleged locators or obtaining authority from them, and without their knowledge, entered into a contract in his own name (which recites that he was the owner of the property described and was desirous of having it developed and proved to contain petroleum) with the defendant Brookshire Company for the development of the three quarters in question and also the southwest quarter of the same section. By this contract the Brookshire Company agreed to enter into possession of the entire section on or before January 3, 1909, and to erect with reasonable diligence on each of three quarters thereof, at places to be selected by it, derricks, and upon the fourth quarter a complete standard drilling rig, and thereupon to commence the actual work of drilling and to prosecute same with all reasonable diligence to a depth of 2,000 feet, unless oil in paying quantities was discovered at a less depth: Provided, however, that if the conditions of drilling at the first location were not favorable, the company should have the right to change the location of the well before it was drilled to the depth specified. As soon as practicable after the discovery of oil in paying quantities and the completion of the first well, the company was to commence drilling operations on at least one of the three remaining quarters and continue such operations with all reasonable diligence until oil was produced there-

on in paying quantities, and that as soon as the work was completed on any quarter the development should be prosecuted upon the remaining quarters until all were tested. As soon as oil in paying quantities was discovered on a quarter section, the company was immediately to take all necessary steps at its own expense to obtain a patent from the United States, and upon issuance thereof to convey to Burge and one Johnson designated portions of the patented land.

The Brookshire Company entered into possession under the contract and did some work on each of the locations, and was drilling on the southwest quarter at date of the withdrawal. The other defendants claim portions of the land in controversy under alleged rights acquired subsequent to the withdrawal, through Burge and Johnson, being the portions to accrue to them under their agreement with the Brookshire Company. It is claimed by the government that the alleged locations were not made in good faith for the use and benefit of the locators, but were an attempt by Burge to obtain title to more mining ground than the law permitted one person to locate in one claim, and were therefore fraudulent and void, and as the Brookshire Company was in possession under him at the date of withdrawal, it was in effect occupying as his agent, and therefore had no rights to the property superior to his; and, second, that it was not in diligent prosecution of work leading to discovery on either of the claims now in controversy at the date of the withdrawal order, within the meaning of the Pickett Act.

[1] From a careful examination of the testimony, I am forced to the conclusion that the paper locations were not made in good faith for the use and benefit of the alleged locators, but that Burge used their names in an attempt to secure for himself an area of mineral land in excess of that allowed by law. The notices and all matters in connection with the location were prepared, initiated, and attended to by Burge without previous authority from the so-called locators. Immediately after posting the notices Burge began dealing with the property as his own, without the knowledge of the named locators, and without obtaining authority from them, and without advising them of his intention or purpose. It was not until after he had made the contract with the Brookshire Company that any effort was made to obtain authority to act for the locators, and then only because he was advised that it was necessary to clear the apparent title. He thereupon wrote the alleged locators, inclosing powers of attorney to be executed by them, and which were excuted without question, and without their making any inquiry, or being advised as to what disposition Burge intended to make or had made of the property, or what contracts he proposed to enter into, or what he intended to do with the proceeds. Thereafter, and at the request of Burge, they executed deeds to him for a nominal consideration; the amount thereof being suggested and fixed by him, and in effect a mere gratuity on his part. The testimony shows that the alleged locators understood their names were being used by Burge for his own advantage and profit.

It is unnecessary to refer to the evidence in detail. The entire transaction is well put by the witness Nyc, whose name was used in the attempted location of the northwest quarter, and with whom Burge

seems to have had the principal dealings regarding that property. Nyc says that he first learned that his name had been used as a locator in a letter from Burge in January, 1909, requesting the execution of a power of attorney; that he (witness) did not understand that he was locating for himself, but that Burge was getting some oil land, out of which, later, all would get some profit; that Burge told him the location would be a valuable thing for him and some day pay him well, but did not make any direct statement as to the probable amount of the profit; that he (witness) knew nothing about the contract or options entered into by Burge, and made no inquiry in reference thereto, and never requested any statement or accounting from Burge, but "I took Burge to be a promotor who had been able to locate certain oil fields in which oil could be found." The transactions between Burge and the so-called locators were carried on principally by correspondence. One letter of July 18, 1910, from Burge to Nyc has been produced. In this letter Burge says:

"I am inclosing a quitclaim deed, which I am going to ask you to kindly execute for me, and also get the Kisers to properly sign. I am inclosing $50 apiece for yourself and Maud, and also the same for Nellie and her husband, which I will leave for you to give them. You undoubtedly have seen by the papers that thousands of acres of land in California have been withdrawn. Well, all my located land comes under that act and is affected by it, so we have quite a fight on our hands, and the oil people in this district, and in fact all the fields in this state, have representatives in Washington, trying to protect us. I have been advised by my attorneys to get these quitclaims from all those whose names are used in my locations as it may help me some in my fight for the land. I am into it and intend to stay until I know, one way or the other."

By this letter, Mr. Burge himself characterizes the transaction. He refers to the property as "my located land," and the names used in "my locations" and this characterization is borne out and supported by the testimony of practically all of the alleged locators.

[2, 3] It is manifest that Burge could acquire no right in mineral lands as against the government by such subterfuge, and since the Brookshire Company was in possession and claiming under him, and as his representative or agent, it necessarily follows that its interest was no greater than his. It is true there is no limitation as to the number of mining claims an individual or association of individuals may locate, but it is provided that no claim shall exceed 20 acres for each individual (section 2331, R. S. [Comp. St. 1916, § 4630]) or 160 acres for any association. Section 2330, R. S. (Comp. St. 1916, § 4629). This is a direct and positive limitation of the amount of mining ground any one claimant may appropriate individually or as a member of an association in any one claim, and he cannot evade the law by the use of the names of his friends, relatives, or employés. Any device whereby one person is to acquire more than 20, or an association more than 160, acres in area, by one discovery, constitutes a fraud upon the government and is without legal support and void. Cook v. Klonos, 164 Fed. 529, 90 C. C. A. 403; Nome & Sinook v. Snyder, 187 Fed. 385, 109 C. C. A. 217; Gird v. Cal. Oil Co. (C. C.) 60 Fed. 531; Hall v. Mc-Kinnon, 193 Fed. 572, 113 C. C. A. 440; Duffield v. S. F. Chemical Co., 205 Fed. 480, 123 C. C. A. 548.

[4] It is argued that, since there is no law requiring or authorizing the posting and recording of a notice of location of mining claims prior to discovery, and since the Pickett Act undertakes to protect a certain class of occupants or claimants of oil or gas bearing lands at the date of withdrawal order, the good faith of the occupant or claimant, and not that of the locators, is the material question involved in these suits; but the Brookshire Company's occupation or claim to the property was under a development contract with Burge as his representative and in part for his benefit, and unless he had or could acquire a lawful right to the property it necessarily follows that the contention is without merit.

I am not concerned at this time with the status or interest, if any, of an occupant or claimant at the date of withdrawal, who had, in good faith and without knowledge of the fraudulent character of the paper locations, purchased or acquired the alleged interests of the locators, and was occupying or claiming the property in his own right, and not for or as the representative of another. That question is not presented by this record, and I refrain from indicating any opinion thereon. It is enough that here the defendants are claiming and were in possession under the so-called locators, and if such locations were fraudulent their rights must fail.

This view renders it unnecessary to consider the question of whether the Brookshire Company was in diligent prosecution of work leading to discovery on the claims in question, within the meaning of the Pickett Act, at the date of the withdrawal order. Whatever may be the construction or the scope and effect of the act, it is manifest that it was intended and designed for the benefit of those who were intending at the date of the withdrawal order to acquire title or the right to possession of mining ground by complying in good faith with the mining laws of the United States, and not one seeking to evade such laws or obtain title in violation thereof.

[5, 6] The plaintiff is therefore entitled to a decree as prayed for, except that the suits should be dismissed as to the marketing companies. There is nothing in these cases to distinguish them from U. S. v. Midway Northern (D. C.) 232 Fed. 619. The fact that the purchasers of the oil removed it from the premises through their own pipe lines after its delivery to them by the operating companies does not affect the question, nor make them proper parties to suits in equity brought against the operating companies to enjoin and restrain a continuation of the trespass.

Inasmuch as it appears from the bills that the plaintiff was not, and the defendants were, in the adverse possession of the disputed property at the commencement of the suits, it follows that, if a court of equity has jurisdiction at all, it is for the purpose of preventing waste, and the only proper parties to such a suit are those who are committing or threatening to commit the waste complained of, or causing or permitting it to be done. Such a suit cannot be treated or made to serve the purpose of one to remove a cloud from the title, since the plaintiff is admittedly out of possession. Whitney v. Hay, 181 U. S. 86, 21 Sup. Ct. 537, 45 L. Ed. 758; Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010.

Plaintiff is therefore entitled to a decree as prayed for.