341 P.2d 226

Edgar RUNDLE, Sidney Kick, Harry Kick, Karl Lukefeld, Emil Ingold, Mrs. Herman Smith, H. O. Stuart, Mrs. H. O. Stuart, Appellants,

v.

REPUBLIC CEMENT CORPORATION, a corporation, Appellee.

No. 6591.

Supreme Court of Arizona.

June 17, 1959.

Rehearing Denied July 14, 1959.

Fickett & Dunipace, and May, Lesher & Dees, Tucson, for appellants.

Edward B. Ashurst, Wickenburg, for appellee.

UDALL, Justice.

This is an appeal by Edgar Rundle, et al., defendants below, from a judgment entered in favor of plaintiff-appellee, Republic Cement Corporation, quieting its title to certain placer mining claims on unappropriated government land. The primary question presented is whether the evidence, taken in a light most favorable to plaintiff, sustains the findings of fact and judgment entered therein. The parties will be referred to as plaintiff or Republic, and defendants.

The plaintiff corporation brought this action to quiet its title, as against defendants', to twenty-eight unpatented mining claims theretofore located by Burney C. Prigge and seven other citizens of the United States from whom it deraigned title. The paramount title of the United States was admitted, both in the complaint and answer. The complaint alleged that defendants, without right, claimed to have some interest in or title to said mining claims. The answer, after making certain denials, alleged that defendants own as "mining claims" *most of the ground covered by plaintiff's claims* and in the prayer they ask "* * * that title of these defendants to their mining claims be quieted against the plaintiff." In the case of Saxman v. Christmann, 52 Ariz. 149, 79 P.2d 520, this court, we believe, erroneously treated similar allegations in an answer to a quiet title action as being sufficient to warrant defendants asking for affirmative relief.

On the issues thus framed a jury was empaneled and the trial proceeded. At the close of plaintiff's case the issue of fraud against the government in the location of the claims in question was formally raised by defendants through a proposed amendment to their answer. At first this trial amendment was denied but was later granted. Defendants called no witnesses. By agreement of counsel the jury was discharged and the matter submitted to the court upon cross motions for judgment.

While the location notices are all signed by Burney C. Prigge in behalf of himself and the other seven locators, the law implies the right of one person to locate claims in the name of another and no express authorization is necessary. It is also well settled that an association of eight persons may locate 160 acres in a single claim, Rooney v. Barnette, 9 Cir., 200 F. 700; Hall v. McKinnon, 9 Cir., 193 F. 572; however, there is no statutory limit to the number of claims that may be thus located.

Before entering final judgment in the matter the court made formal findings of fact which may be summarized as follows: plaintiff corporation was authorized to do business in the State of Arizona; the eight locators (Burney C. Prigge, et al.) entered unappropriated public domain and, by posting notice of location upon the ground, located the claims now in question; the lands located were discovered to have, and did contain, valuable deposits of limestone and other minerals suitable for and adapted to the manufacture of cement; the locators posted notice of location on each of said claims as by law provided; within 60 days copies of all of said notices were recorded in the office of the County Recorder of Yavapai County and within the same period the locators did carefully mark and establish the boundary lines to all of said claims by creating substantial monuments thereon; the eight locators did sell, transfer and convey by a good and sufficient deed, and for a valuable consideration, their interest in said mining claims to Burney C. Prigge; the latter then conveyed, for a valuable consideration, all of said claims to the plaintiff corporation.

The evidence stands uncontradicted that a very substantial sum of money was expended in connection with the location and development of these placer claims. This covered such items as expenditures for monumenting, core drilling, surveying, geologist, roads, erection of a small building, shipment of raw material, etc. It is true that practically all of such funds were advanced directly or indirectly by locator Burney C. Prigge. The defendants seek to make a point of the fact that the other seven locators did not share equally in the fruits of the venture. It is significant that none of them—insofar as the record shows —have complained of unfair treatment. It is not denied that at the time they signed the quit-claim deeds to Prigge they were

each paid ten dollars in cash, which in law is a valuable consideration. Moreover, each of them are substantial owners of capital stock in the plaintiff corporation which now asserts its ownership of said claims. It would seem that these locators, all live persons—not fictitious dummies—do not need the defendants to fight their battle for them, nor can any contention now be made as to their unequal interests.

■ We hold there is no merit to the numerous assignments of error and supporting propositions of law that are directed to the insufficiency of the evidence to support the findings of the court, supra, as to the monumenting, locating and transferring of the claims in question. This for the reason that it manifestly appears upon the face of the documentary exhibits and from the uncontradicted testimony that all of the various steps necessary to locate said mining claims, and transfer same, were meticulously complied with.

In order to test the correctness of the two remaining legal premises upon which defendants' appeal rests, it is necessary to first determine precisely the nature of the action here involved. When that is answered the rules of law that govern will be manifest.

Defendants seek to have applied the equitable principles of law governing the ordinary quiet title action where the fee title is at issue and "adverse suits" which involve quieting title *to mining claims after application for patent has been made*. On the other hand there is a wealth of authority for the proposition that controversies such as the instant suit are determined by "the law of possession."

■ That there is a distinction is made clear from the following excerpts quoted from American Mining Law, Fourth Edition (edited by A. H. Ricketts), Vol. I, Ch. XIX, §§ 382, 383, and 384:

Section 382. *Introductory*

"The main difference between an 'adverse suit' and a 'possessory action' is that in an adverse suit the judgment therein affects the title to the ground in dispute as between the parties thereto and the government and the judgment in a possessory action affects only the title to the ground as between parties litigant. As a general rule an action in ejectment, or a suit to quiet title, as circumstances may dictate, is as proper in the one class of cases as in the other, * * *."

Section 383. *Actions*

"A possessory action for the recovery of any mining title or for damages to any such title is adjudged by the law of possession between the parties, although the paramount title to the land is in the United States. This leaves the United States entirely out of consideration, and neither party can

100

take advantage of the paramount title of the United States either to sustain his own title or to defeat that of his adversary."

Section 384. *Law of Possession*

"The law of possession means that the prior location and occupation carry with them the prior and better right; or, in other words, the possessory right is the right to explore and work the property under the existing law and regulations. All controversies as to mining claims before patent must be determined by the law of possession. * * * "

■ We hold the instant case, while denominated a quiet title suit, is in reality properly classified as a "possessory action" and not an "adverse suit".

This leads us to a discussion of defendants' first proposition of law, viz.:

"In quiet title actions plaintiff must recover on strength of his own title and not on weakness of the defendants' title."

The following quote from their brief is indicative of how strongly defendants rely upon this proposition, viz.:

"This proposition of law is the foundation of appellants' appeal, and the *remaining propositions are built thereon*. Appellants are entitled to judgment against Republic because the evidence in the trial court taken in the light most favorable to Republic disclosed fatal defects (i. e., fraud) in Republic's title. Because of these fatal weaknesses in Republic's title it was not necessary for appellants to put on evidence of their title to be entitled to judgment in their favor." (Emphasis and insert supplied.)

■ Were this an "adverse suit" defendants' proposition of law would be correct; however, we submit there is a well-recognized exception to the general rule that governs in a "possessory action" such as this:

" * * * The ordinary rule of law that the plaintiff must recover on the strength of his own title and not on the weakness of that of his adversary does not apply. The rule in possessory actions is that the better title prevails." Section 384, supra, American Mining Law.

" * * * it must be remembered that in possessory actions to recover unpatented mining claims the rule of ejectment, namely, *that the plaintiff must recover on the strength of his own title, and not the weakness of his adversary's, does not apply*. In actions of this sort the better title prevails. Thus it is said in Strepey et al. v. Stark et al., 7 Colo. 614, 5 Pac. 111: 'It is further to be observed

that the rule in ejectment that the plaintiff must recover, if at all, on the strength of his own title, and not upon the weakness of that of his adversary, is held not to apply to possessory actions for mining claims, where neither party has strictly speaking any legal title, but when the prior possession of plaintiff is pitted against the present possession of the defendant. "Practically the real question involved in all such cases is: Which, as against the other, has the better right to mine the land in question?" ' * * *." (Emphasis supplied.) National Mill & Min. Co. v. Piccolo, 54 Wash. 617, 104 P. 128, 130.

To the same effect see also: Parker v. Belle Fourche Bentonite Products Co., 64 Wyo. 269, 189 P.2d 882, 884; Oroville International Salts Co. v. Rayburn, 104 Wash. 137, 176 P. 14; Lucky Four Gold Mining Co. v. Bacon, 62 Colo. 342, 163 P. 862.

Defendants quote a statement appearing in Saxman v. Christmann, supra, as authority for their position. It does appear that the general rule as to the necessity for reliance upon the strength of one's own title was there set forth in an obiter-dicta statement. We have examined the original record and nowhere does it appear that such issue was raised, nor was attention called to the exception to the rule. Furthermore we find that the statement made was wholly unnecessary to the decision rendered.

We hold it is the exception rather than the general rule that applies to the instant case.

■ When we limit our consideration to the question as to who has the better title, i. e., plaintiff or defendants, it becomes obvious that plaintiff does and should therefore prevail in this action. This for the reason that its predecessors in interest had meticulously taken all of the steps necessary to locate said mining claims—which were later conveyed to the plaintiff corporation—whereas, the defendants did not see fit to offer any evidence as to the validity of their alleged conflicting claims.

As between the parties pitted against one another in this lawsuit the defendants are in effect saying to plaintiff, we need not establish our right but you cannot prevail as your claims are invalid because of locators' fraud against the government. Such a position, we believe, violates the principle that the government is to be left entirely out of consideration and that neither party can take advantage of the United States' paramount title to "either sustain his own title or to defeat that of his adversary."

Upon the issue of fraud raised by defendants' trial amendment to their answer the trial court made this express finding, viz.:

"The court finds, as a fact, that there was no fraud in connection with the original location of said placer claims by the original locators, and that no fraud was perpetrated by plaintiff or any of its officers, agents, or employees in the original location of said mining claims, and finds the issues in this respect against the defendants and each of them and in favor of plaintiffs."

By an appropriate assignment of error this finding is attacked on the ground that the *undisputed evidence* shows that a fraud was perpetrated upon the government. In support of such assignment two propositions of law are advanced by defendants, viz.:

"2. The attempted location of placer claims by 'dummy' associations renders the attempted locations void *'ab initio'* for fraud.

"3. The question of the fraud of a dummy association may be raised as between two private parties."

This squarely presents the legal question as to whether in this "possessory action" the issue of fraud against the government may be raised as between these private litigants.

There are only two reported cases, that we have been able to find, where this precise question of fraud was presented and directly passed upon by an appellate court. The New Mexico Supreme Court in 1911, in the case of Riverside Sand & Cement Mfg. Co. v. Hardwick, 16 N.M. 479, 120 P. 323, 324, stated:

" * * * (this) is a matter in which the government alone is interested, and of which it alone can take advantage. * * *"

The Idaho Supreme Court in the case of Brassey v. Peck, 1942, 63 Idaho 609, 123 P.2d 1014, 1015, stated:

"The fact, even though true, that a 'dummy' is used in the location of a mining claim, is not available to a private litigant, and is 'a matter in which the government alone is interested, and of which it alone can take advantage * * * the *law has been finally settled that the government alone is concerned, and the same is not relevant in a contest between individuals, except in adverse proceedings wherein the government is a silent party.'*" (Citing cases.)

Moreover, in an analogous situation this court, in the mining case of Perley v. Goar, 22 Ariz. 146, 195 P. 532, held that the question of a qualification of the locator of a mining claim, so far as the validity thereof is affected by his alienage, is one which cannot be raised or determined in action between private individuals wherein the United States is not made a party. To the same effect see also Wilson v. Triumph Consol. Min. Co., 19 Utah 66, 56 P. 300,

302; and McKinley Creek Mining Co. v. Alaska-United Mining Co., 183 U.S. 563, 22 S.Ct. 84, 46 L.Ed. 331.

The defendants rely upon the fact that Prof. Lindley, author of "Lindley on Mines", in his 1914 Third Edition, has taken a different position than that earlier espoused in the Second Edition published in the year 1903; coupled with an implied holding in the "possessory action" case of Cook v. Klonos, 1908, 164 F. 529 (that arose in Alaska which has special mining laws enacted by the Congress), wherein the Ninth Circuit Court of Appeals in 1908 affirmed the judgment of the lower court which was based upon fraud in the location of certain mining claims. The right of a private litigant to raise such a question in this type of case is not discussed therein; it was just taken for granted.

The other cases cited in support of the proposition that fraud against the government may be here asserted are readily distinguishable. For instance, Nome & Sinook Co. v. Snyder, 9 Cir., 187 F. 385; Gird v. California Oil Co., C.C., 60 F. 531; Durant v. Corbin, C.C., 94 F. 382, are "adverse suits" arising out of application for patent— where the government is a silent party. The following are equity suits brought directly by the United States to cancel out— on the grounds of fraud—located claims or patents previously issued, viz.: United States v. Chanslor-Canfield Midway Oil Co., D.C., 266 F. 142; United States v. Brookshire Oil Co., D.C., 242 F. 718; United States v. California Midway Oil Co., D.C., 259 F. 343, and United States v. Trinidad Coke & Coking Co., 137 U.S. 160, 11 S.Ct. 57, 34 L.Ed. 640, 641. We submit that such avenue is readily available to the government in this matter if the facts so warrant.

 In accord with the great weight of authority we hold that in this "possessory action" the defendants were not entitled to raise the issue of fraud as it was a matter of which the government alone could take advantage. Having reached this conclusion it becomes unnecessary for us to review or analyze the evidence bearing on fraud. The amendment to the answer raising such issue was improperly allowed even though the end result reached was correct.

Judgment affirmed.

PHELPS, C. J., and JOHNSON, J., concur.

BERNSTEIN, Justice (dissenting).

This is an appeal from a judgment entered below quieting title to certain placer mining claims on unappropriated federal government land. Appellants, defendants below, rested on the evidence elicited in the course of the case made by plaintiff-appellee, contending that it revealed the defectiveness of appellee's title claim, wherefore, by agreement of counsel, the jury

was discharged and the matter was submitted to the court upon cross-motions for a directed verdict. The principal question presented is whether the locations made by appellee's predecessors in title, eight persons forming an association, were invalid because (a) in truth, made for the plaintiff corporation rather than the association members, and (b) therefore violative of the statutory provisions which allow such claims on unappropriated federal government land. (The issue was formally raised by amendment of the answer which, although first denied for the reason that "defendants cannot raise the issue of fraud as a defense", was later granted and formed the basis of the court's finding on the subject as hereinafter set forth.) The pertinent statutory provisions are that:

"* * * (W)here placer claims are upon surveyed lands, and conform to legal subdivisions, no further survey or plat shall be required, and all placer-mining claims located after the 10th day of May, 1872, shall conform as near as practicable with the United States system of public-land surveys, and the rectangular subdivisions of such surveys, and *no such location shall include more than twenty acres for each individual claimant * * *.*" (30 U.S.C.A. § 35) (Emphasis supplied.)

"Legal subdivisions of forty acres may be subdivided into ten-acre tracts; and two or more persons, or associations of persons, having contiguous claims of any size, although such claims may be less than ten acres each, may make joint entry thereof; *but no location of a placer claim, made after the 9th day of July 1870, shall exceed one hundred and sixty acres for any one person or association of persons * * *.*" (30 U.S.C.A. § 36.) (Emphasis supplied.)

The facts bearing on the issue—of which, unfortunately, the majority opinion fails to take note—are gained chiefly from documentary evidence and the testimony of Burney C. Prigge, the president and a promoter of appellee.

In about April, 1955, Prigge engaged Mark Lintz, an engineer, to assist Prigge in finding a limestone deposit upon the following terms: Whatever claim Lintz had he would deed to Prigge "for a [cash] consideration"; Prigge would form a corporation and Lintz would act as consulting engineer to it for a separate consideration. Thereafter, on June 2, 1955, the appellee was formed as a Delaware corporation. Lintz was paid for his services by the corporation from at least July 5 to October 10, 1955, and, during that time, he was engaged almost continuously in work for the corporation. The last of three contracts with Lintz, dated August 30, 1955, provided that Lintz was "to render his services exclusively to the Corporation".

perform such services "* * * as may be assigned to him from time to time by the Board", act as "Consulting Engineer, Architect and Supervisor" of the proposed project of the corporation and, after Securities and Exchange Commission approval of the corporation's project was obtained, serve as a consulting engineer for the corporation until August 15, 1962. A further specific provision of the agreement recited that Lintz "shall render his services and full time exclusively to the corporation during the entire period of this agreement unless written permission is obtained from the corporation prior to Lintz's acceptance of any other propositions from any other person, firm, association or organization."

At an unspecified time during the above-described period, Prigge, Lintz and six other persons located limestone deposits in California, Nevada and Arizona (not here involved) and, apparently through Prigge, the individual interests were transferred to the corporation. The six other locators were Vincent F. Denney, identified as a friend of Prigge and an original incorporator and officer of appellee; Adeline Johnson, another original incorporator of appellee; T. C. Kennedy, a member of appellee's board of directors; Morris M. Mueller, secretary and treasurer of appellee; Mrs. Prigge; and Mrs. Mueller. On or about August 3, 1955 (although Prigge testified that Denney's stock may have been issued to him as early as June), the corporation issued 500 shares of its ten dollar par value stock to each of the locators other than Prigge (whose compensation will be separately detailed infra) and charged the cost thereof to Prigge, as consideration for the transfer of their claims to Prigge. All this, it should be noted, was before location of the claims here in question.

It later appeared, however, that the California, Nevada and Arizona limestone deposits were not suitable for the manufacture of cement. Accordingly, Prigge, Lintz and other locators sought out other deposits and located the claims here in question, Drake Limestone Numbers 1 through 6 and 8 through 27 and Drake Aluminum Silicate Numbers 1 and 2, each claim for 160 acres. Prigge, Lintz, Mueller and a geologist employed by the corporation first entered the lands on August 15, 1955. On September 8, 11, and 15, 1955, the limestone location notices were signed and posted, Prigge signing for the others, and on October 3, 1955, the aluminum silicate location notices were signed and posted, each of the notices being recorded shortly after the date of their signing. The other locators' claims were then deeded to Prigge, the limestone claims on September 26 and the aluminum silicate claims on October 18, 1955. On October 17, 1955, Prigge deeded the limestone claims, and on October 25, 1955, the aluminum silicate claims, to the

corporation. The recited consideration for each deed was ten dollars (although from Prigge's testimony it would appear that each signator of the deeds received ten dollars, when paid it is not at all clear). The principal, if not the only, consideration at the time, it is plain, on which appellee relied exclusively in making its motion, was the earlier transmittal of 500 shares of stock to each locator, given, as Prigge readily admitted, "before we ever heard of it [the Drake property]." Prigge viewed the transfer of the Drake claims as "restitution", the transfer of a good, usuable limestone deposit which the locators had agreed to provide. All of the locators knew when they deeded the property to Prigge that Prigge would transfer the property to the corporation; as Prigge said, "That is what it was acquired for."

It is thus crystal clear that, whatever were the circumstances of the earlier transactions, the Drake locations were made for the benefit of the corporation, not the named locators, with the understanding that the claims would be deeded to Prigge and thence to the corporation at a convenient time. That conclusion is just as apparent with respect to Prigge and Lintz as it is with respect to the other locators. Although Prigge explained that at the time he and Lintz were acting in "a dual capacity", for themselves and the company, Prigge having given Lintz permission in this instance to avoid his exclusive services agreement, it is also apparent that in seeking and locating the limestone deposits, both men were acting as employees of the company for the benefit of the company. Indeed, Lintz's every expense was paid by the corporation, and Prigge as well as the others, as will be seen, had been paid by the corporation for the transfer of the claims well before they were in fact located.

We now come to Prigge's role in the matter. At least in 1956, when the Securities and Exchange Commission instituted "stop order" proceedings against the registration of shares by appellee, there were 706,680 shares in the company outstanding, 10,110 shares sold for cash at par (Prigge testified that the corporation "never sold anyone stock for any amount other than at par value"—ten dollars), 33,177 issued to an underwriter in connection with the underwriting agreement of the company and the remainder, 663,393 shares, issued to the promoters of the company. 970 shares were issued to Prigge for wildcat claims other than the Drake claims; 80,000 shares were issued to him in return for some $68,000 and the limestone claims, or, as elsewhere stated by Prigge, on July 8, 1955, two months before the first Drake claims were located, he received $675,000 worth of stock for all of the Drake claims. In all, by 1956, 567,000 shares were owned by Prigge personally. His total contribution to the company was valued at about $88,000, although he testified that another

$60,000 was expended by him of which the corporation has no record and for which he did not want the company to pay him and he received no pay, and apparently figured no sum was owing, for his efforts as president of the company.

On the foregoing, the conclusionary finding of the trial court—the only finding made on the subject—was, "as a fact, that there was no fraud in connection with the orig-.inal location of said placer mining claims by the original locators, and that no fraud was perpetrated by plaintiff or any of its officers, agents, or employees in the original location of said mining claims * *." Even disregarding the ambiguity of that finding in the circumstances and according it maximum respect, the force of the recited evidence is such that I see no escape from the conclusion that the attempted locations are invalid because not made in conformity with the governing law of the United States.

The statutory provisions quoted hereinabove have been authoritatively read to mean that a qualified individual may locate no more than twenty acres in a single claim (although he may locate as many such claims as he can); but that a bona fide association of persons may locate in a single claim the multiple of twenty acres times the number of locators, not to exceed eight, so that eight associates may locate 160 acres in a single claim. Rooney v. Barnette, 9 Cir., 200 F. 700; Hall v. McKinnon, 9 Cir., 193 F. 572; Nome & Sinook Co. v. Snyder, 9 Cir., 187 F. 385; Cook v. Klonos, 9 Cir., 164 F. 529, modified 9 Cir., 168 F. 700; United States v. Chanslor-Canfield Midway Oil Co., D.C.S.D.Cal., 266 F. 142, modified 9 Cir., 266 F. 145, motion to remand granted, 254 U.S. 664, 41 S.Ct. 148, 65 L.Ed. 464; United States v. Brookshire Oil Co., D.C. S.D.Cal., 242 F. 718; Gird v. California Oil Co., C.C.S.D.Cal., 60 F. 531, 545. A corporation is considered an individual person under the statute and thus itself may locate in a single claim as many as twenty acres, but no more. See 2 Lindley on Mines Section 449 (3d Ed.). However lenient courts have been in permitting actual locators to use the names of distant persons as associated locators, cf. United States v. California Midway Oil Co., D.C.S.D.Cal., 259 F. 343, affirmed 9 Cir., 279 F. 516, they have been insistent that the association be a bona fide one and that no person be allowed to use another person's name as a dummy for his own, to extend the domain of his single claim to more than the allowable twenty acres. The oft-stated purpose of the statutory rule is that the public domain and the riches imbedded therein should be distributed "among as large a number as possible of those who wish to acquire such land for their own use, rather than to favor a few individuals, who might wish to acquire princely fortunes by securing large tracts of such land," see Durant v. Corbin, C.C., 94 F. 382, 383, and the cases have

been decided with a sympathetic appreciation of that purpose. See, in addition to the previously decided cases, United States v. Trinidad Coal & Coking Co., 137 U.S. 160, 11 S.Ct. 57, 34 L.Ed. 640.

In this case it is plain from a mere chronological review of the facts that the locators were not acting for themselves, but were dummies for the corporation, or, at best, for Prigge. Indeed, in espousing the view that the locators owed the claims in question to the corporation—and that is the only explanation offered for the lack of consideration for the transfers to Prigge —Prigge in effect conceded it was the corporation, not any individual locator, which was to benefit from the discovery. The names of the locators, then, were as sham, and the corporation must be deemed to have exceeded the bounds of its lawful grasp. Moreover, even if the earlier consideration of 500 shares to each locator other than Prigge be referred to, the taint attaching to the instant claims would not be erased. It is apparent that, from the outset, the venture which resulted in appellee's claims was Prigge's venture, or, as he willed it, that of the corporation which he controlled. In deeding the land to Prigge, the locators knew that Prigge would deed it to the corporation and could cause the corporation to issue any number of shares to him in payment for the land, thus, as in fact happened, increasing his share of the holding to far in excess of one-eighth. Accord-

ingly, this is not a case, so far as the evidence discloses, like Borgwardt v. McKittrick Oil Co., 164 Cal. 650, 657, 130 P. 417, 419, where the locators adopted "a corporate management as an appropriate means of regulating and handling their joint interests, and each retaining, through the agency of the corporation, the exact interest in the land which he acquired under his location." Rather, as in Nome & Sinook Co. v. Snyder, supra, the scheme was that the locators other than Prigge were to have a vastly less than proportionate, if not indeed only a nominal, share of the total holding. True, Lintz would have benefitted handsomely from salaries and bonuses paid by the corporation if it had become a successful enterprise, and perhaps some of the others hoped for as much for themselves. Such expectation or hope might have palliated the locators other than Prigge (none of whom testified for appellee), but it could not serve to satisfy the legal requirement that a claim in excess of twenty acres must be made by a bona fide association of persons, each of whom has truthfully laid claims to a proportionate share of the land encompassed by the total claim. The facts as they appear from this record, however indulgently analyzed, persistently demand the conclusion that the intention of the locators from the outset and the net effect of the transaction here reviewed were to yield to Prigge more than twenty acres of government land, to benefit him by benefit-

ing the corporation which he effectively controlled at all times.

The only remaining question, then, at which point the majority opinion first comes to grips with the problem, is whether the foregoing defect in appellee's claim may be adjudicated to appellee's disfavor in this case. One case, decided in 1911, Riverside Sand & Cement Mfg. Co. v. Hardwick, 16 N.M. 479, 120 P. 323, 325, has held that the matter is one in which "The government alone is concerned, and the same is not relevant in a contest between individuals, except in adverse proceedings, wherein the government is a silent party." [1] That ruling was supported in the main by reference to the second edition of Lindley on Mines. Later federal cases, however, ignored Lindley's statement and ruled that the matter could be asserted in private litigation. See, e. g., Cook v. Klonos and Rooney v. Barnette (decided in 1912 and also ignoring the New Mexico case), both supra. Upon reviewing some of the later authorities, Mr. Lindley in the third edition of his work, Section 450, announced a modification of his view to the effect that the fraudulent character of locations may be investigated and determined in private litigation "where the original parties to the fraud or persons having notice are before the court." The better view, I think, is, not only that we should defer to the federal cases interpreting the federal statute, but that the federal cases and Mr. Lindley's later judgment are sound. The government is a party concerned not only where an adverse suit is brought following a patent application, but in every suit involving a claim upon unappropriated government lands. It is from the government that appellee claims to have derived title, and the validity of that title depends on whether the location was perfected in accordance with the terms which the government laid down for such cases, there being no question that appellee was on notice of all that its predecessors in title

---

1. One other case, Brassey v. Peck, 63 Idaho 609, 123 P.2d 1014, has repeated the quoted language approvingly. The decision in that case, however, is distinguishable. The problem there was not the use of a dummy without interest, but merely the use of one person's name without her advance permission. It also may be noted that the Idaho court cited, in addition to the New Mexico case, the earlier edition of Lindley referred to in the text herein, from which it would appear that the later view of Lindley was not called to the court's attention.

Cases involving challenge to the citizenship of a locator or grantee, of course, are distinguishable because of the special considerations applicable in such cases. In light of the intricacy not infrequently involved in questions of citizenship and the gravity of any decision bearing on the matter, it is understandable that courts should avoid adjudications of citizenship, particularly by state courts generally unfamiliar with attendant problems, without the assistance of government counsel to put forward the government's position.

did in that regard. See Belk v. Meagher, 104 U.S. 279, 284, 26 L.Ed. 735.

Nor should it assist appellee to vary the argument, as the majority opinion does, by denominating the action as only a "possessory" one. It has long been acknowledged that "There are two kinds of possessory rights * * * ; one based on [statute], the other resting on mere prior occupation. To maintain a right under the first, plaintiff must show a compliance with the requirements of the statute; to succeed under the second he must show prior possession, without alienation or abandonment, down to the time of the entry complained of." Rush v. French, 1 Ariz. 99, 154, 25 P. 816, 834. Appellee's contention—made plain from its complaint, prayer for relief, all subsequent argument and the judgment entered—is, not that it was ousted from prior occupation while diligently working towards discovery, but that its predecessors in title had made a discovery and had done all that was required to perfect the claim in question under the statute, so that, despite lack of actual possession, appellee could hold the land against all others later in time. The ensuing property right which the judgment as affirmed grants to appellee affords "an exclusive right of possession to the extent of * * * [the] claim as located, with the right to extract the minerals, even to exhaustion, without paying any royalty to the United States as owner, and without ever applying for a patent or seeking to obtain title to the fee"; or would afford the right to obtain a patent; would be "capable of transfer by conveyance, inheritance, or devise"; and, in short, would be " * * * even without patent, * * * a property right in the full sense, unaffected by the fact that the paramount title to the land is in the United States * * *". See Union Oil Co. of California v. Smith, 249 U.S. 337, 348–349, 39 S.Ct. 308, 311, 63 L.Ed. 635. That much, the cases and analysis make plain, a plaintiff cannot obtain without, in accordance with the general rule, see, e. g., Saxman v. Christmann, 52 Ariz. 149, 79 P.2d 520, prevailing upon the strength of his title rather than any weakness in his adversary's, showing "compliance with requirements of the statute." For, in such a case, "The plaintiffs may have their title quieted only if they have one * * * 'The right to the possession comes only from a valid location. Consequently, if there is no location, there can be no possession under it.'" Zeiger v. Dowdy, 13 Ariz. 331, 334–335, 114 P. 565, 566; Belk v. Meagher, supra. Exceptions to the general rule—such as that properly invoked where the only weakness in a plaintiff's title is a failure to perform annual assessment work, on the ground that the plaintiff's title is not forfeited by such failure until an adverse claim is perfected in accordance with the law applicable to

relocations (pursuant to which, among other things, a relocator may not show the invalidity of the original location), see National Mill. & Min. Co. v. Piccolo, 54 Wash. 617, 104 P. 128; reversed 57 Wash. 572, 107 P. 353; can hardly be deemed applicable.[2]

Accordingly, I would hold that the aggrandizement attributable to appellee made its locations invalid and that such invalidity must defeat its claim in the instant action. My certainty of view on that issue has made it unnecessary to consider any of the other assignments of error, as to which I, therefore, express no opinion.

STRUCKMEYER, J., concurs in this dissent.

2. Other cases cited are no more persuasive in avoidance of the general rule. Parker v. Belle Fourche Bentonite Products Co., 64 Wyo. 269, 189 P.2d 882, also involved a question concerning the performance of annual assessment work. Moreover, in passing, the court implied that the use of "dummy locators" would have invalidated the plaintiff's claim. See 64 Wyo. at page 290–291, 189 P.2d at page 890. In Oroville International Salts Co. v. Rayburn, 104 Wash. 137, 176 P. 14, 15, the court merely held that there was "ample testimony * * * to satisfy a jury of compliance * * * with the requirements of the statute as to their filing on the property as a placer claim and doing all subsequent assessment work," and the point of quoting from the Piccolo case, supra, is not made apparent. In McInerny v. Allebrand, 107 Cal. App. 457, 290 P. 530, 534 the court found, after analyzing the facts, that the

evidence failed to show that plaintiff had made any valid discovery. Accordingly, despite the lack of showing of possessory title by defendant, the court reversed the judgment for plaintiff in reliance on the rule "well established in California that in a possessory action of this character, the plaintiff must rely upon the strength of his own title, rather than the weakness of that of his adversary." In Lucky Four Gold Mining Co. v. Bacon, 62 Colo. 342, 163 P. 862, plaintiff's complaint alleged that the defendant had made application for patent to a lode claim in conflict with plaintiff's claim. When it appeared that defendant had withdrawn his application for patent, the lower court directed a verdict for the plaintiff. On appeal, all that was decided was that the action should have been dismissed because the proof showed no conflict of claims. . .